## STUART v. HAYDEN et al.

(Circuit Court of Appeals, Eighth Circuit. December 30, 1895.)

### No. 666.

1. NATIONAL BANKS — THEIR STOCK SUBSCRIPTIONS AND CAPITAL A TRUST ESTATE.

The capital, the unpaid subscriptions to the capital stock, and the liability of the holders of the paid-up stock to pay an additional amount equal to the par value of their stock under section 5151, Rev. St., constitute a trust estate sacredly pledged for the security of the creditors of a national banking association.

2. SAME—DIVERSION OF THEIR ASSETS.

The willful destruction or diminution of any part of this trust estate, or the diversion of the proceeds of any of it from the creditors of the bank, is a fraud upon these creditors, and subjects its perpetrator to a suit by them or their legal representative for proper relief.

3. SAME—FRAUDULENT TRANSFER OF STOCK VOIDABLE IF INJURIOUS TO CREDITORS.

A shareholder of a national banking association, who, for the purpose of escaping his individual liability, transfers his shares in a failing bank to‘ one who, for any reason, is unable to respond as promptly and effectually as he was to the liability their ownership imposes, commits a fraud upon the creditors of the bank, renders his transfer voidable at their election, and leaves himself subject to the individual liability imposed by the ownership of the stock if the creditors elect to pursue him.

4. SAME—RECEIVER PROPER PARTY TO ENFORCE LIABILITY OF A FRAUDULENT TRANSFERROR OF STOCK.

The receiver of a national bank is the proper party to maintain a suit on behalf of its creditors to set aside a fraudulent transfer of stock by one of its stockholders and to enforce his individual liability.

5. PRACTICE—THE CHANCELLOR'S FINDING OF FACT PRESUMPTIVELY CORRECT.

When the court has considered conflicting evidence, and made its finding and decree thereon, they must be taken to be presumptively correct; and unless an obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand.

6. FACTS CONSIDERED.

The facts in this case considered, and the finding of the court that the stockholder Stuart had transferred his stock for the purpose of escaping individual liability, to the damage of the creditors, sustained.

7. PRACTICE—CROSS BILL.

A cross bill is brought either to aid in the defense of the original suit or to obtain a complete determination of the controversies between the original complainant and the cross complainant over the subject-matter of the original bill. If its purpose is other than this it is not a cross bill. A cross bill may not interpose new controversies between codefendants to the original bill, the decision of which is unnecessary to a complete determination of the controversies between the complainant and the defendants over the subject-matter of the original bill. If it does so, it becomes an original bill, and must be dismissed, because there cannot be two original bills in the same case.

8. NATIONAL BANKS—FRAUDULENT TRANSFER OF STOCK VOIDABLE, NOT VOID.

A transfer of stock by the stockholders of a national bank for the double purpose of escaping individual liability and defrauding the purchaser is valid until disaffirmed, not void until affirmed; and it may be affirmed by the transferee and disaffirmed by the creditors of the bank, or vice versa.

9. SAME—FRAUD UPON VENDEE IMMATERIAL IN RECEIVER'S SUIT.

The transferees of such stock, who are parties defendant to a suit by a receiver of the national bank to enforce the individual liability against the transferror on the ground that he transferred the stock to escape it, cannot by a supposed cross bill inject into such a suit the litigation of the question whether or not the vendor deceived and defrauded them by the transfer.

10. RESCISSION OF CONTRACT—RETENTION OF PURCHASED PROPERTY FATAL.

Silence, delay, vacillation, acquiescence, or the retention and use of any of the fruits of a fraudulent sale or trade that are capable of restoration, for any considerable length of time after the discovery of the fraud, are fatal to the right to rescind the same.

Appeal from the Circuit Court of the United States for the District of Nebraska.

On December 23, 1892, the Capital National Bank of Lincoln, Neb., was, and for eight years theretofore had been, a national banking association incorporated and doing business as such under the acts of congress relative to national banks. It had a nominal capital of $300,000. On January 23, 1893, this banking association failed, and in March of that year Kent K. Hayden, one of the appellees, was appointed receiver of this bank by the comptroller

of the currency of the United States. When the bank failed in January, 1893, its assets were about $900,000 and its liabilities over $1,400,000. From the year 1885 until its failure it had frequently suffered heavy losses. During this time it had accumulated worthless paper to the amount of more than $300,000, and more than $50,000 of its capital had been tied up in real estate. The appellees Augustus ·T. Gruetter and Charles F. Joers were copartners engaged in the furniture business at Lincoln, in the state of Nebraska, under the firm name of Gruetter & Joers.. They owned a building in Lincoln and the ground on which it stood, which they traded to the appellant, Ambrose P. S. Stuart, for $67,500, on December 23, 1892. The appellant, Stuart, had been a stockholder and director of this banking association for many years, and was on December 23, 1892, the chairman of the finance committee of its board of directors. On that day he bought of Gruetter & Joers their building and the land on which it stood for the sum of $67,500, and paid for it by assuming a mortgage of $30,000 thereon, by transferring to them 150 shares of the stock of this bank of the par value of $15,000, for the agreed price of $18,000, and by giving them about $19,500 in cash. On June 10, 1893, the comptroller of the currency of the United States found that, in order to pay the debts of this banking association, it was necessary to enforce the individual liability of its stockholders under section 5151 of the Revised Statutes, and thereupon he made an assessment upon the shareholders of the bank of an amount equal to the par value of the stock held by them respectively, and directed the receiver, Hayden, to enforce this liability by suit if necessary. The receiver thereupon exhibited his bill in the court below against the appellant, Stuart, in which he alleged that the transfer of his stock on December 23, 1892, was made with a knowledge of the failing condition and insolvency of the bank, for the purpose of defrauding its depositors and creditors, and of escaping from the liability imposed upon him by section 5151 of the Revised Statutes; that the transferees, Gruetter & Joers, were irresponsible, and unable to discharge the liability imposed by the ownership of the stock; and he prayed that the transfer might be held void as to the creditors and depositors of the bank and the receiver, and that the latter might recover of the appellant, Stuart, the $15,000 assessed upon this stock. Stuart interposed a demurrer, on the ground, among others, that Gruetter & Joers were not made parties to the bill. This demurrer was sustained, with leave to amend, and an amended bill was filed in which Gruetter & Joers were made parties to the suit, and substantially the same allegations as in the original bill were reiterated. Stuart answered this bill, admitted the trade of the stock for the real estate, but denied that this trade was made for the purpose of defrauding the creditors or depositors of the bank, or for the purpose of escaping his individual liability. The defendants, Gruetter & Joers, answered. Their answer was, in effect, an admission of the averments of the bill. After this answer had been filed, they prayed and obtained permission to file a cross bill. In their cross bill they alleged, in substance, that they were induced to make this trade by the false representations of the value of the stock and the financial condition of the bank made to them by the. appellant, Stuart, and they prayed·that the transfer and assignment of the stock might be wholly canceled and set aside by decree of the court, that they might be released from any liability by reason thereof, and that Stuart might be adjudged to make a full restitution to them of the sum of $18,000 paid by them to him for the purchase of said stock by the conveyance of their block; but they did not tender or offer to restore to him the $19,500 in cash which they had received as a part of the purchase price of the block, or to cause him to be released from his obligation to pay the mortgage of $30,000, which was secured thereon. The appellant, Stuart, demurred to this cross bill on the grounds, among others, that the bill did not state such a case as in any manner constituted a defense to the original bill, or a ground for any relief against the complainant in that bill, and that it attempted to litigate an independent matter between the respondents to the original bill without interposing this matter as a defense to the original bill, and without in any way connecting the subject-matter of the cross bill with the matter set forth in the original bill. The court overruled this demurrer, testimony was taken, and, after final hearing, the court entered a decree—First, that the transfer of the 150 shares of stock from the

appellant, Stuart, to the appellees, Gruetter & Joers, was void as against the receiver, Kent K. Hayden, and that Stuart should pay to the receiver the full amount of the assessment upon that stock, together with interest thereon at 7 per cent. per annum from the 10th day of July, A. D. 1893; and, second, that the transfer of said stock was void as against the appellees Gruetter & Joers; that it should be set aside, canceled, and held for naught; that the stock should be reinstated upon the books of the Capital National Bank in the name of Stuart, and that said Stuart should pay to the appellees, Gruetter & Joers, $18,000 with interest at 7 per cent. from the 3d day of January, 1893. Stuart appealed to this court from this decree.

C. C. Flansburg, for appellant.

G. M. Lambertson (F. M. Hall, Amasa Cobb, and A. E. Harvey, with him on the brief), for appellee Hayden, receiver.

John H. Ames, for appellees Gruetter & Joers.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The capital, the unpaid subscriptions to the capital stock, and the liability of the holders of stock that is paid for to pay an additional amount equal to the par value of their stock under section 5151, Rev. St., are all parts of a trust estate sacredly pledged for the security of the creditors of a national banking association organized under the national banking acts. The willful destruction or diminution of any part of this trust estate, or the diversion of the proceeds of any of it from the creditors of the bank, is a fraud upon these creditors, and subjects its perpetrator to a suit by them or their legal representative for proper relief. Hayden v. Thompson (decided at the present term) 17 C. C. A. 592, 71 Fed. 60, and cases cited; Peters v. Bain, 133 U. S. 670, 690, 10 Sup. Ct. 354. A shareholder of a national banking association, who, for the purpose of escaping his individual liability under section 5151 of the Revised Statutes, transfers his shares in a failing bank, to one who, for any reason, is unable to respond as promptly and effectually as he was, to the liability their ownership imposes, commits a fraud upon the creditors of the bank, renders his transfer voidable at their election, and leaves himself subject to the individual liability imposed by the ownership of the stock if the creditors elect to pursue him. Bank v. Case, 99 U. S. 628, 630, 632; Peters v. Bain, supra; Bowden v. Johnson, 107 U. S. 251, 261, 2 Sup. Ct. 246; Cook, Stock, Stockh. & Corp. Law, § 265; Johnson v. Laflin, 5 Dill. 65, 86, Fed. Cas. No. 7,393; Davis v. Stevens, Fed. Cas. No. 3,653; Nathan v. Whitlock, 9 Paige, 152; McClaren v. Franciscus, 43 Mo. 452; Marcy v. Clark, 17 Mass. 329. After this bank had failed, and this receiver had been appointed, he was the proper party to, and the only party who could, maintain a suit on behalf of the creditors of this bank to set aside the fraudulent transfer referred to in the bill, and to enforce the individual liability of Stuart. Hayden v. Thompson, supra; Bailey v. Mosher, 11 C. C. A. 304, 63 Fed. 488, 491; Bank v. Colby, 21 Wall. 609; Hornor v. Henning, 93 U. S. 228; Stephens v. Overstoltz, 43 Fed. 771; Bank v. Peters, 44 Fed. 13. These propositions are too well settled to warrant more extended notice than their statement. By them the right of the re-

ceiver, Hayden, to enforce the individual liability, under section 5151, against the appellant, Stuart, must be governed.

In order to determine whether or not this receiver was entitled to enforce this liability, the court below was required to answer two questions, and two questions only. They were: (1) Did Stuart make this transfer of his stock to Gruetter & Joers on December 23, 1892, with knowledge, or with such notice as would, if pursued with reasonable diligence, have given him knowledge, that the bank was insolvent, or its failure impending, and for the purpose of escaping from his individual liability on the stock? And (2) did the transfer cause any damage to the creditors of the bank? The trial court, after considering the evidence submitted, answered both these questions in the affirmative, and the only question remaining for us to consider upon this branch of the case is whether there was sufficient testimony to fairly warrant these conclusions.

The record discloses these facts: The appellant, Stuart, was on December 23, 1892, and had been for many years, a stockholder, a director, and a member of the finance committee of the board of directors of this bank. He was in almost daily attendance at the bank's office, and he occasionally examined some of its bills receivable. He owned 150 shares of its stock of the par value of $15,000, and he had $10,300 on deposit in its vaults. He was an intelligent, educated gentleman, a retired professor of chemistry, who had been devoting his time and attention to loaning money and acting as a director of a bank. The bank had a nominal capital of $300,000, and for six years it had constantly paid semi-annual dividends on its stock. It had had many losses, and heavy ones, but prior to February 2, 1892, no bad debts had been charged off, and on that day only $21,402.46 was charged off on account of bad debts, while only $30,000 of a surplus of about $34,000 was also stricken off. At the time the transfer of this stock was made in December, 1892, the bank had about $70,000 of overdue paper, and its books showed that it held about $100,000 of overdue paper that it did not have at all. When the bank failed on January 23, 1893, one month after this transfer, its total assets were about $900,000 and its total liabilities were $1,463,016.17. $660,600 of these assets were bills receivable. Of these, bills to the amount of $68,596.82 were good, bills to the amount of $141,393.27 were doubtful, and bills to the amount of $319,-611.90 were worthless. The bank had met with early, frequent, and disastrous losses. It had lost $20,300 by the failure of Donnell, Lawson & Simpson in 1885. Stuart was aware of this failure, and knew that there was a loss by it, but did not know the amount of the loss, and did not examine the books to learn how heavy it was. It had lost $14,000 by the failure of the Sherman County Banking Company. Stuart knew that there was such a loss, but did not know its amount. It held defaulted paper to the amount of $40,000 or $50,-000, which resulted from the failure of a banker named Small, at Edgar, Neb., about 1886. Stuart knew that this loss had been made, but did not know its amount, and had been told by some of the officers of the bank that the latter had obtained real estate

enough to nearly even it up. The bank held bogus and worthless paper of the Western Manufacturing Company, signed by "E. Hurlbut, Jr., Manager," to the amount of about $125,000, when it failed, in January, 1893. Two or three months before the transfer of this stock, the appellant, in the discharge of his duties as a member of the board of directors, and as chairman of its finance committee, had examined the bills receivable of the bank, but he could not remember whether there was then as much as $100,000 of this paper in the bank, or whether or not there was any of it in the bank. One witness testified that at the time Stuart was negotiating for the purchase of the block from Gruetter & Joers, he told him that the price of the block in the trade was to be $67,500, and that he would trade in his bank stock, if he traded at all. In answer to the remark of the witness that $67,500 was an exorbitant price, and that he would rather have the bank stock, that he thought it better and safer, Stuart replied, "Well, we have to take some risk," and said that he did not like the way the officers of the bank were doing business, that he did not like the style, that a large share of the bank's capital was tied up in real estate, and that there was no prospect of dividends, and he preferred to do his own business and manage his own affairs. Another witness testified that on the morning that the bank failed, in January, 1893, he told her that he had not liked the management of the bank, and had felt anxious about it for a long time; that he did not like the manager's going into the Western Manufacturing Company business, and the stave business in Arkansas; that from that they went into the skating-rink business; and that when they went into the baseball business he told them that they must stop, and do a banking business. This witness further testified that Stuart then told her that the capital of the bank was impaired, and that he had known for quite a while that they had some bad debts, such as very poor paper, there, amounting to about $136,000. When the appellant was interrogated regarding these conversations, his answer was substantially the same as that which he gave to the questions relative to his knowledge of the financial affairs of the bank,—that he did not remember what was said, although he remembered the fact that he had had the conversations. This, then, is the record: A national bank which has a nominal capital of $300,000 has made such losses that its assets are worth but $900,000 while its debts are more than $1,400,000. It has $660,600 of bills receivable, over $300,000 of which are worthless. A director of several years standing, the chairman of the finance committee of its board of directors, whose business it is to examine and know the value of its assets and the amount of its liabilities, who did examine its bills receivable two or three months before this transfer, who knew that the bank had made heavy losses, but did not know and did not examine the books to learn how heavy, who disliked the management, and had long been anxious about it, who knew that there was no prospect of the bank's paying more dividends, that its capital was impaired, and that its managers had been in the stave business, the skating-rink business, and the baseball business, against his protest, that a large portion of its

capital was tied up in real estate, and that it had $136,000 of very poor paper,—transferred his stock at a premium of 20 per cent., and drew $10,300 in money that he had on deposit in the vaults of this bank to pay it to third parties in a trade for a building subject to a mortgage of $30,000, only 30 days before the bank disastrously failed. Upon this record the court below found that the transfer was made for the purpose of escaping the individual liability imposed by the ownership of the stock, notwithstanding the fact that the appellant himself testified that he had no such intention, that he supposed that the bank was solvent, and notwithstanding the fact that the proof was uncontradicted that the trade was proposed and sought, not by him, but by Gruetter & Joers.

When the court has considered conflicting evidence, and made its finding and decree thereon, they must be taken to be presumptively correct; and unless an obvious error has intervened in the application of the law, or some serious or important mistake has been made in the consideration of the evidence, the decree should be permitted to stand. Warren v. Burt, 12 U. S. App. 591, 600, 7 C. C. A. 105, 110, 58 Fed. 101, 106; Paxson v. Brown, 27 U. S. App. 49, 62, 10 C. C. A. 135, 144, 61 Fed. 874, 883; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355; Evans v. Bank, 141 U. S. 107, 11 Sup. Ct. 885; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821. After a careful examination of this evidence, we are unwilling to hold that the trial court committed any mistake in the consideration of the evidence applicable to the question under consideration, or in the conclusion which it deduced therefrom. On the other hand, the facts and circumstances in evidence, in our opinion, well warranted the answer to this question given by the court below, and would have led us to the same conclusion upon a trial de novo.

The second issue determined by the court below was whether or not the transfer of the stock caused any damage to the creditors of the bank. It is insisted by counsel for appellant, Stuart, that there could be no fraud upon the creditors of the bank unless the transfer was made to parties who were insolvent before the transfer was made; but this position is untenable. Suppose that Stuart had transferred his stock for $18,000 to one who owed no debts, and who was worth exactly $18,000, and the latter had paid him that amount for the stock, the result would have been that, although the transferee was perfectly solvent before the transfer was made, he would have been utterly insolvent after it was effected, and unable to pay a dollar upon the individual liability of $15,000 which the ownership of the stock imposed. The creditors would have sustained the same damage as if the transfer had been made to one who was insolvent before he received it, and consequently the fraud upon them would have been the same in character and the same in effect. The question was not, therefore, whether the transferees were solvent or insolvent at the time of the transfer, but whether or not the individual liability of the transferees was as valuable as was that of the transferror. If it was not, the creditors were damaged and the fraud was actionable. The evidence leaves

this question without doubt. Stuart was solvent, and amply able to pay the $15,000 in full, and at once. Gruetter & Joers were solvent before, but insolvent and unable to pay the liability after, the transfer. They paid to Stuart $18,000 of their property for his stock, which was worth nothing, and which imposed upon them a liability of $15,000. The operation decreased their assets $18,000 and increased their liabilities $15,000. It diminished the net value of their estate $33,000. This made them insolvent, and rendered them unable to pay their individual liability on the stock in full. There was no error, therefore, in the answer given by the court to the second question; and that part of the decree which adjudged that the transfer of this stock was fraudulent and voidable as to the creditors of the bank and the receiver who represents them, and that the receiver was entitled to recover of the appellant the $15,000 assessed upon this stock by the comptroller of the currency, was right.

But were the appellees Gruetter & Joers entitled to a decree in this suit against their codefendant, Stuart, for the avoidance of the transfer of the stock and the recovery of its estimated value in the trade for the real estate, on the grounds set forth in the paper which they style a "cross bill"? Before entering upon the discussion of this question, let us, if possible, get a clear conception of the character of this transfer, and the relation to it of the parties represented in this suit. The creditors of the bank and their representative, the receiver, assert that this transfer was made by Stuart to escape his individual liability upon the stock; that they were damaged by the transfer; and that, therefore, it should be avoided as to them; and we have so held. But these facts furnish no ground for setting aside the transfer as to the transferees Gruetter & Joers. They allege in their bill, however, that they were induced to purchase and accept the transfer of the stock by fraudulent misrepresentations as to its value, and as to the financial condition of the bank which Stuart made to them, and that on that ground the transfer should be set aside as to them. But these allegations, if well founded. would not authorize any court to set aside the transfer at the suit of the creditors or of the receiver. Such a transfer of stock may be valid as to the creditors and receiver and voidable as to the transferees (Florida Land & Imp. Co. v. Merrill, 2 C. C. A. 629, 52 Fed. 77, 81), and it may be valid as to the transferees and voidable as to the creditors and the receiver (Bowden v. Johnson, 107 U. S. 251, 261, 2 Sup. Ct. 246). Again, when this transfer had been completed and recorded in the books of the bank, it was not void as to any one. It was merely voidable at the election of those whom it defrauded. It was valid until disaffirmed, not void until affirmed. Oakes v. Turnquand, L. R. 2 H. L. 325, 344; Mining Co. v. Smith, L. R 4 H. L. 64; Upton v. Englehart, Fed. Cas. No. 16,800. Each one of those defrauded by this transfer, upon his discovery of the fraud, had the right to disaffirm this transaction, but silence or acquiescence affirmed it. It follows that some of those defrauded might affirm. while others might repudiate it. The transfer, then, was valid as to all the

parties to this suit until each disaffirmed it. The receiver dis-
affirmed it, and filed his bill to avoid it as to himself, and to col-
lect of Stuart the assessment upon the stock transferred, on the
ground that he had transferred it to escape his individual lia-
bility, to the damage of the creditors of the bank. Stuart, by his
answer, denied the material allegations of this bill. Gruetter &
Joers answered that the allegations of the bill were true, and
consented that the relief for which it prayed should be granted.
The question recurs: Were they, after they had made this answer,
entitled, upon filing a pleading in this suit which alleged that
the transfer of the stock was voidable as to them, because they
were induced to trade for it by the fraudulent misrepresentations
of Stuart, to a decree that the transfer should be set aside as to
them, that they were not liable for the assessment on the stock,
and that they should recover of Stuart the amount which the
stock was estimated to be worth in the trade? A cross bill is
brought either to aid in the defense of the original suit or to
obtain a complete determination of the controversies between the
original complainant and the cross complainant over the sub-
ject-matter of the original bill. If its purpose is different from
this, it is not a cross bill, although it may have a connection with
the general subject of the original bill. It may not interpose
new controversies between codefendants to the original bill, the
decision of which is unnecessary to a complete determination
of the controversies between the complainant and the defendants
over the subject-matter of the original bill. If it does so, it
becomes an original bill, and must be dismissed, because there
cannot be two original bills in the same case. Story, Eq. Pl. §
389; Cross v. De Valle, 1 Wall. 1, 14; Ayres v. Carver, 17 How.
591; Rubber Co. v. Goodyear, 9 Wall. 807, 809; Stonemetz Print-
ers' Mach. Co. v. Brown Folding-Mach. Co., 46 Fed. 851; Fidelity
Trust & Safety Vault Co. v. Mobile St. Ry. Co., 53 Fed. 850, 852;
McMullen v. Ritchie, 57 Fed. 104. Tested by these rules, the plead-
ing filed by Gruetter & Joers was not a cross bill. It was not
brought in aid of their defense to the original suit, for they had
none. They confessed the allegations of the original bill. It was
not necessary, in order to obtain a complete determination of the
controversies between the complainant and the defendants in the
original suit over the subject-matter of the original bill,—the lia-
bility for the assessment on this stock,—for those issues must nec-
essarily be completely disposed of by the decision of that suit. If,
as the receiver claimed it should be, the transfer of the stock was
avoided as to him by the decree in that suit, that would discharge
Gruetter & Joers from all liability for the assessment upon the
stock, for the transfer could not be void as to the receiver and
impose a liability upon Stuart, and valid as to the receiver and
impose one upon Stuart's transferees at the same time. This
pleading of Gruetter & Joers attempted to bring into this suit a
new and independent controversy between the codefendants in
the original suit, the decision of which depended upon facts not
material to the issues between the complainant and any of the

defendants, while the decision of the latter issues depended upon facts not essential to the determination of the new controversy between the codefendants which this pleading sought to import. It contained none of the essentials of a cross bill and every characteristic of an original bill, except the statement of a cause of action, and that exception did not aid its sufficiency as a cross bill. The demurrer to it should have been sustained.

There is another reason why this supposed cross bill should be dismissed. Gruetter & Joers neither pleaded nor proved in this case a state of facts which would entitle them in any court to the rescission of the transfer of the stock and the recovery of its purchase price, which they asked in this pleading and obtained by this decree. They obtained this stock by this trade. They exchanged with Stuart a single piece of real estate in the city of Lincoln, which they owned, for this stock, $19,500 in cash and the agreement of Stuart to pay a mortgage of $30,000 which they owed. They have sought in this suit, and the court below has granted to them by this decree, a rescission of the transfer of the stock, and its reinstatement upon the books of the bank in the name of Stuart, and a recovery from him of $18,000, the value at which the parties estimated the stock in the trade, with interest, while they still retained the $19,500 in cash and the agreement of Stuart to pay the mortgage of $30,000, and he retains the real estate. This part of this decree is a perfect non sequitur. Conceding that Gruetter & Joers were induced to make this trade by the fraudulent misstatements of Stuart, they could not rescind it in the part which was burdensome and affirm it in the part which was beneficial to them. They could not rescind it as to the stock and affirm it as to the cash. They must either rescind or affirm it altogether. One who is induced to make a sale or trade by the deceit of his vendee has a choice of two remedies upon his discovery of the fraud: He may affirm the contract, and sue for his damages; or he may rescind it, and sue for the property he has sold. The former remedy counts upon and affirms the validity of the transaction; the latter repudiates the transaction, and counts upon its invalidity. The two remedies are utterly inconsistent, and the choice of one rejects the other, because a sale cannot be valid and void at the same time. Now, the supposed cross bill of Gruetter & Joers, and the proof in this record, show that they elected to affirm, and did affirm, the contract, and sue for damages for the deceit; and these facts conclusively estop them from obtaining any relief on the ground of rescission. The sale or exchange was valid until disaffirmed. Upon the discovery of the fraud they could not, if they would, avoid an immediate choice of an affirmance or a repudiation of the trade. If one who is induced to make a trade or sale by fraud would rescind it, he must immediately, upon his discovery of the fraud, announce his intention so to do, and return all the consideration he has received, to the end that the parties may be put in statu quo before subsequent transactions have made such action impossible. Silence, delay, vacillation, acquiescence, or the retention and use of any of

the fruits of the sale or trade that are capable of restoration, for any considerable length of time after the discovery of the fraud, constitute a complete and irrevocable ratification of the transaction. Rugan v. Sabin, 10 U. S. App. 519, 531, 3 C. C. A. 578, 580, 53 Fed. 415, 418; Kinne v. Webb, 12 U. S. App. 137, 144, 4 C. C. A. 170, 174, 54 Fed. 34, 38; Scheftel v. Hays, 19 U. S. App. 220, 226, 7 C. C. A. 308, 312, 58 Fed. 457, 460; McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29; Grymes v. Sanders, 93 U. S. 55, 62. The supposed cross bill utterly fails to state a case for rescission, because it does not show that Gruetter & Joers ever returned to Stuart the $19,500 in cash which they received from this trade, or that they ever released Stuart from his agreement to pay the mortgage of $30,000 upon the property they conveyed. They could not rescind this trade, and recover back that which they gave in exchange, or any part of it, while they retained at least $49,500 in value that they had received from it. The proof, if it were possible, is more fatal to them than the pleading. The record discloses the fact that they made their election, and chose to affirmatively ratify this transaction, more than a year before they filed this bill for its rescission. It shows that on January 23, 1893, they brought an action at law against Stuart in one of the courts in the state of Nebraska to recover of him damages to the amount of $18,000 for his fraudulent misrepresentation of the value of this stock at the time of the trade. This was, in effect, an action for a part of the purchase price of the real estate which they had conveyed, although it was in form an action for deceit. It could be brought and maintained on the ground that the sale or trade of the real estate was valid, and its title was vested in Stuart, and on no other theory. That suit is still pending. It was a distinct and affirmative ratification of the transfer of this stock and the conveyance of the real estate, after full knowledge of all the facts, and it barred Gruetter & Joers of all right to rescind the trade thereafter. The result is that all that portion of the decree which grants to Gruetter & Joers any relief against the appellant, Stuart, was wrong.

The decree below must accordingly be reversed, without costs to either party, and the case must be remanded to the court below, with instructions to enter a decree to the effect that the transfer of the 150 shares of stock from Stuart to Gruetter & Joers was fraudulent and voidable as to the receiver, Hayden; that it be held for naught as to him, and that he recover of Stuart the assessment levied thereon, with his costs; that the appellees Gruetter & Joers are entitled to no relief against Stuart in this suit; that their supposed cross bill be dismissed, and that Stuart recover of them his costs thereon. It is so ordered.