WHEELER v. McNEIL et al.

(Circuit Court of Appeals, Eighth Circuit. April 2, 1900.)

No. 1,269.

1. ESTOPPEL—SHOWING CONSIDERATION OF CONTRACT—EFFECT OF RECITALS.

Where by a contract one party agreed to execute his notes to the other for a lump sum,—the consideration being the satisfaction of a judgment against the maker for a much larger amount, and the rendition by the payee of services as a lawyer in certain pending litigation,—a subsequent agreement apportioning such notes between the two considerations does not estop the payee, in a suit by the maker for cancellation of the notes apportioned as a retainer on the ground, among others, that the amount was excessive and exorbitant, from showing that such notes were in fact based on both considerations.

2. CONTRACTS—RESCISSION FOR FRAUD—LACHES.

A party having the right to rescind a contract for fraud is required to disaffirm the same at once on discovering the fraud, to restore any consideration received, and place the other party as near as may be in statu quo; and a suit in equity to rescind cannot be maintained five years after the contract was made, during all or the most of which time the complainant had full knowledge of the facts constituting the alleged fraud, and with such knowledge held the defendant to full performance.

Appeal from the Circuit Court of the United States for the District of Colorado.

This suit arose in this way: On June 8, 1893, the appellee Atterson W. Rucker had a judgment against the appellant, Jerome B. Wheeler, for $801,-670.87, and an appeal from that judgment was pending in the supreme court of the state of Colorado. Thereupon they made an agreement that in consideration of the settlement of that judgment, and the retainer of Rucker in certain suits against Wheeler maintained by parties claiming under one Wood, Wheeler should pay to Rucker $20,000 in money and $280,000 in promissory notes, making in all $300,000. Wheeler paid the money, made the notes, and made a written agreement with Rucker and the appellee John L. McNeil, dated on that day, which recites that Wheeler has retained Rucker in the actions pending against him by those claiming under Wood; that, as a retainer, he has executed and delivered to him his three promissory notes of $25,000 each, due in 42, 48, and 54 months, respectively, from their date; and that he has deposited with McNeil, as security for the payment of these notes, 246,750 shares of stock in certain corporations. By the terms of this agreement, Wheeler authorized McNeil to sell the stock on default in the payment of any of the notes, and to apply the proceeds of the sale to the payment thereof. Default was made in the payment of the notes, and McNeil advertised a sale of the stock under the collateral agreement, to take place on March 19, 1898. Meanwhile one of the notes had passed to the appellees Thomas A. Rucker and the First National Bank of Aspen, and another to the appellee F. R. Dorr, while Atterson W. Rucker retained the third one. Thereupon, on March 15, 1898, Wheeler filed a bill in the court below to avoid the notes and the collateral agreement on the ground that they were obtained by extortion, fraud, and misrepresentation, and to enjoin the sale. The answers denied all the averments of fraud, misrepresentation, and oppression; alleged that the real consideration of the notes and the agreement was not only the retainer, but also the compromise and settlement of the judgment which Rucker had against Wheeler, and that the appellees Thomas A. Rucker, the bank, and F. R. Dorr were innocent purchasers, for value, of the notes which they held. Testimony was taken, and after final hearing the court dismissed the bill, and Wheeler appealed from that decree of dismissal.

James C. Starkweather and W. E. Hemingway, for appellant.

Tyson S. Dines and A. W. Rucker (Kyle Rucker, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The gravamen of the charge in this bill is that in June, 1893, while the appellant, Wheeler, was in financial difficulty, and while grave litigation was pending between him and claimants under Wood, the appellee Atterson W. Rucker, who was an attorney at law, falsely represented to him that he was familiar with the facts, and could and would render valuable services in the Wood litigation, if retained, and wickedly threatened that, if he was not so retained, he would disclose his knowledge and render his services to the claimants under Wood; that by means of these false representations and threats he induced and forced the appellant to give him as a retainer in the Wood litigation his promissory notes for $75,000, and to secure them by the 246,750 shares of stock described in the collateral agreement. All the charges of fraud, deceit, threats, and extortion are denied by the answers. The record is voluminous. Upon some questions it is inconsistent, and upon others it is contradictory. It would serve no good purpose to review it in detail, and we content ourselves with a statement of the facts which in our opinion it establishes. Atterson W. Rucker was an attorney at law in June, 1893. He made no false representations of his familiarity with the facts in the Wood litigation, or of the services he would render if retained, which induced Wheeler to agree to pay him a retainer of $75,000, or to make the three notes of $25,000 each and the collateral agreement in suit. He made no threats to disclose his knowledge or render his services to the claimants under Wood which either forced or induced Wheeler to agree to pay him a retainer of $75,000, or to make the notes and collateral agreement in suit. Rucker was not Wheeler's attorney or adviser prior to June 8, 1893. On the other hand, he had been and was prosecuting an action against Wheeler in his own behalf, in which he had obtained a judgment for $801,670.87. Wheeler's appeal from this judgment was pending in the supreme court of Colorado. Wheeler was represented by, and in all he did in the negotiations and agreements of June 8, 1893, he acted under the advice of, his trusted attorneys at law, who had been acting for him in opposition to Rucker for years. Under these circumstances, Wheeler, his two attorneys, and Rucker met and negotiated for days to secure a compromise of the pending litigation over this judgment of Rucker against Wheeler. The result of that negotiation was that Rucker agreed to stand retained for Wheeler in his litigation with the claimants under Wood, and to render such services for him as he should request, and to satisfy his judgment for $801,670.87, for $20,000 in cash and $280,000 in promissory notes. The three notes for $25,000 each, here in suit, were part of the notes for $280,000; and the real consideration for them and for the collateral agreement securing them was not the retainer of Rucker alone, but it was the compromise of the pending suit between Rucker and Wheeler and the retainer, and the chief consideration was the compromise. After this compromise and retainer for $300,000 were agreed upon, Wheeler

and Rucker agreed to assign $225,000 of the consideration to the compromise, and $75,000 to the retainer, and the notes for the deferred payments and two collateral agreements which recited this appropriation were executed. Rucker never advised or acted as attorney for the claimants under Wood, but he remained faithful to his retainer, and rendered all the services for Wheeler that he was requested to render, but he was not called upon to render services of any substantial value. These facts furnish no ground for the granting of any relief to the appellant. He was not forced to execute the notes and agreement by any threats of Rucker. He was not induced to execute them by any false representations of Rucker. He was not deceived or persuaded into their execution by Rucker while he stood in a relation of trust or confidence with him. They dealt with each other at arm's length, and Wheeler made his notes and his collateral agreement, after full consideration, under the advice of his own attorneys who had been conducting his litigation against Rucker for years. There was no extortion of an unreasonable and exorbitant fee, because the chief consideration for the notes and agreement was the compromise of the judgment against Wheeler. The retainer of Rucker had little, if any, effect in increasing the amount agreed upon for the compromise and the retainer together, above the amount which would have been required to effect the compromise alone. The unavoidable conclusion is that the appellant failed to establish the essential facts which he pleaded in his bill, and for this reason his suit was rightly dismissed.

The contention of counsel for appellant that Atterson W. Rucker is estopped from taking advantage of the fact that the real consideration for the notes and the collateral agreement was the compromise of the judgment and the retainer, and not the retainer alone, has been considered. It is true that he signed the collateral agreement, which recites that the consideration for the three notes was the retainer; that at the same time he signed another agreement, that the remaining $225,000 of the $300,000 was to be paid for the compromise of the judgment; and that in his answer he admitted that it was agreed between him and Wheeler that $75,000 of the $300,000 should be designated and appropriated as his retainer. But it is axiomatic that the true consideration of an obligation or agreement may be proved, although it contains the recital of a false one; so that the agreements do not estop Rucker from proving and availing himself of the truth. Nor can his answer be permitted to have that effect; for while he admits in it that the agreement was made between himself and Wheeler to assign $225,000 of the $300,000 as the consideration for the compromise of the judgment, and $75,000 as the consideration for the retainer, he also pleads that before this contract was made they had agreed that Wheeler should pay $300,000 in solido for the compromise of the judgment and the retainer. Moreover, the evidence conclusively shows that the agreement to appropriate a part of the $300,000 to the compromise of the judgment, and a part to the retainer, was a perfunctory contract, made without any actual consideration, after the negotiations for the compromise and the retainer had been practically concluded, and after the actual consideration for both had been fixed

at the lump sum of $300,000. This is a suit in equity. The appellant has received the benefit of the compromise of the judgment and of the retainer. He agreed to pay $300,000 for them. There is no equity in his claim to escape from a payment of any of the sums which he agreed to pay for two desiderata which he has received, because he and Rucker assigned too large a share of that consideration to one, and too small a share of it to the other, of them.

There is another reason why this bill could not be maintained, even if the execution of the notes and the pledge of the stock were made to retain Rucker, and were induced by his alleged threats and misrepresentations. This is a bill to rescind a contract and to avoid a pledge, for fraud. Conceding the averments of the bill to be true, the contract and pledge were voidable, not void. They were valid until disaffirmed, not void until affirmed. Stuart v. Hayden, 36 U. S. App. 462, 475, 18 C. C. A. 618, 625, 72 Fed. 402, 409; Oakes v. Turnquand, L. R. 2 H. L. 325, 344; Mining Co. v. Smith, L. R. 4 H. L. 64; Upton v. Englehart, Fed. Cas. No. 16,800. Until they were disaffirmed, Rucker was bound by his retainer, and precluded from serving the claimants under Wood; and Wheeler was bound to pay the notes, or to apply the pledged stock to their payment. The contract and pledge were made on June 8, 1893. Wheeler's litigation with the claimants under Wood continued until December, 1895. He knew the character of the retaining fee he promised to pay, the threats and representations which he alleges induced the execution of the contract and the pledge, and whether or not these representations were true, immediately after June 8, 1893, for they related to the knowledge of Rucker, and the services he could render in the Wood litigation; and under the retainer he had a right to, and doubtless obtained from Rucker, a complete disclosure of Rucker's information, and the nature of the assistance he could render. In any event, he knew all the facts relative to the alleged fraud of which he complained as early as December, 1895, for then the Wood litigation practically ceased; and he knew what information Rucker had given, and what services he had rendered. Nevertheless he held Rucker fast under his retainer, repeatedly asked forbearance in the collection of the notes, and promised to pay them, and never attempted to rescind or avoid his contract and pledge until he commenced this suit, on March 15, 1898, about five years after the contract and pledge were made,—many years after he knew all the facts constituting the alleged fraud of which he complains, and more than two years after he had realized all the benefits of the agreement. These facts conclusively estop the appellant from rescinding or avoiding his contract and pledge.

For just and wise reasons, the law gives to one who is induced by fraud to make a contract the option, upon discovery of the facts constituting the fraud, to rescind the contract and restore the consideration, or to affirm it and recover the damages he has sustained. But it imposes upon him the imperative duty to exercise his option, to release the party with whom he has contracted, to restore any consideration he has received which may be restored, and to place the parties as near as may be in statu quo immediately upon the discovery of the fraud, if he would rescind or avoid his contract. Nor does it permit

him to speculate upon his option, to lie in ambush for years, until changes in the conditions or markets make his interest plain, before he makes his choice. Silence, delay, acquiescence, or the use or retention of any of the fruits of the contract for any considerable length of time after a discovery of the fraud is in itself an exercise of the option, and constitutes a complete and irrevocable ratification of the transaction. Rugan v. Sabin, 10 U. S. App. 519, 531, 3 C. C. A. 578, 580, 53 Fed. 415, 418; Kinne v. Webb, 12 U. S. App. 137, 144, 4 C. C. A. 170, 174, 54 Fed. 34, 38; Stuart v. Hayden, 36 U. S. App. 462, 478, 18 C. C. A. 618, 627, 72 Fed. 402, 411; McLean v. Clapp, 141 U. S. 429, 12 Sup. Ct. 29, 35 L. Ed. 804; Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798. This rule is peculiarly applicable to cases of the character here in question, where the property in controversy is stocks of mining and other like corporations, which are speculative in character. Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798; Kinne v. Webb, 12 U. S. App. 137, 144, 4 C. C. A. 170, 174, 54 Fed. 34, 38. The appellant retained all the fruits of the contract and pledge he seeks to avoid. He held Rucker bound by his retainer for more than two years, until the Wood litigation had ended and he had derived all the benefits of the contract. He repeatedly promised to pay the notes, and obtained forbearance in the enforcement of the notes and the pledge, after he knew all the facts which constituted the alleged fraud, and he was thereby irrevocably estopped from rescinding or avoiding them long before he presented his bill. Equity will not relieve from the burdens of a contract induced by fraud, at the suit of a complainant who has acquiesced in it and accepted its benefits for years after he had full knowledge of the facts which constituted the fraud. The decree below is affirmed.