CASE 10—INDICTMENT AGAINST GRINSTEAD & TINSLEY FOR CRIMINAL
   CONSPIRACY TO FIX PRICE OF MERCHANDISE—MARCH 10.

# Commonwealth of Kentucky v. Grinstead & Tinsley.

DEMURRER TO INDICTMENT SUSTAINED.   COMMONWEALTH APPEALS.
            APPEAL FROM WHITLEY CIRCUIT COURT.

STATUTES—COMBINATION TO FIX PRICE OF MERCHANDISE—REPEAL BY
   CONSTITUTION—REPEAL BY OMISSION FROM GENERAL REVISION OF
   LAWS—WHEN VOID FOR UNCERTAINTY—REJECTION OF WORDS CARE-
   LESSLY INSERTED—SUFFICIENCY OF INDICTMENT.

Held:   1. Constitution, section 198, providing that "it shall be the
   duty of the General Assembly from time to time, as necessity may
   require, to enact such laws as may be necessary to prevent all
   trusts, pools, combinations or other organizations, from combin-
   ing to depreciate below its real value any article, or to enhance
   the cost of any article above its real value," did not repeal the
   provisions of the act of May 20, 1890, now embodied in Kentucky
   Statutes, sections 3915, 3917, providing that any corporation or
   individual who shall become a member of, or a party to, or in any
   way interested in, any pool, trust, combination, or agreement for
   the purpose of regulating the price or limiting the production of
   any article of property, shall be deemed guilty of the crime of
   conspiracy, and punished therefor, as the requirement of the Con-
   stitution is not a grant of power, and does not impliedly prohibit
   the Legislature from going beyond the duty enjoined.
2. As the statute is not inconsistent with the Constitution, it was not
   repealed after the lapse of six years from the adoption of the Con-
   stitution, by section 1 of the schedule of that instrument, which
   provides that "all laws which are inconsistent with such provi-
   sions as require legislation to enforce them shall remain in force
   until such legislation is had, but not longer than six years after
   the adoption of this Constitution."
3. As the general act revising the criminal laws, adopted April 10,
   1893, did not legislate upon the subject of "pools, trusts, and
   conspiracies," the omission therefrom of the act of May 20, 1890,
   relating to that subject, did not operate to repeal that act.
4. Kentucky Statutes, section 3915, prohibiting "any" combination to
   regulate or fix prices and "any" combination to limit production,
   is not void for uncertainty.

5. Kentucky Statutes, section 3917, which provides for the punishment by fine of "any corporation, company, firm, partnership or persons, or association of persons," found guilty of violating that statute, and for the punishment by fine or imprisonment, or by both fine and imprisonment, of any president, manager, director or other officer or agent, or receiver of any corporation, company, firm, partnership, or any corporation, company, firm or association, or member of any corporation, firm or association, or any member of any company, firm or other association. or any individual," found guilty of such violation, was manifestly intended to provide for the punishment of artificial persons or combinations by a fine, and for the punishment of natural persons by fine or imprisonment, or by both fine and imprisonment; and to effectuate that intention the word "person," as used in the first part of the section, will be rejected as a mere inaccuracy, while the words "any corporation" and the words following them, where first repeated in the second part of the section, will be treated as governed by the word "of," just as they are where they first occur.

6. As the words of the statute are descriptive of the offense, which is purely a statutory one, an indictment which follows the language of the statute is sufficient; it not being necessary to allege the means adopted to effect the object of the combination, the offense being complete if defendant enters into an agreement with another for the purpose of fixing the price of any merchandise.

CLIFTON J. PRATT, ATTORNEY-GENERAL, AND J. N. SHARP, COM-
MONWEALTH'S ATTORNEY, TWENTY-EIGHTH DISTRICT OF KENTUCKY,
FOR APPELLANT.

1. The act of May 20, 1890, now section 3915, Kentucky Statutes, does not contravene section 198 of the Kentucky Constitution. Johnson v. Higgins, 3 Metcalf, 576; U S. v. Cruikshanks, 92 U. S., 542; Cooley Con. Limitation, pp. 87, 88, 90 and 168; People v. Draper, 15 New York, 532, 543; Schedule Constitution, sec. 1.

2. Said act is not repealed because it was not re-enacted by the act of April 10, 1893, entitled "Crimes and Punishments." This has been conclusively settled by this court in the case of Conley v. the Commonwealth, 17 Ky. Law Rep., 678; Buchanan v. Commonwealth, 15 Ky. Law Rep., 738; Long, Treasurer v. Stone, Auditor, 19 Ky. Law Rep., 246.

3. The statute is not void for uncertainty because it prescribes two penalties. Henry v. Trustees, &c., 48 Ohio Stat., 671; Rhodes v. Meadly, 46 Ohio Stat., 234; Raymond v. Cleveland, 42 N. J. Law, 293; Pitt v. Shipley, 46 Cal., 161.

4. The Statute is not indefinite and uncertain.

Commonwealth of Ky. v. Grinstead & Tinsley.

5. The indictment is good; this is purely a statutory offense, created by the statute alone, and the words of the statute are descriptive of the offense and complete in itself, and an indictment, charged in the words of the statute, is good.  Sellers v. Commonwealth, 13 Bush, 332; Commonwealth v. Bartholomew, 17 Ky. Law Rep., 1133; Thompson v. Commonwealth, 20 Ky. Law Rep., 401; Moore v. Commonwealth, 92 Ky., 630; White v. Commonwealth, 21 Ky. Law Rep., see p. —; Mitchell v. Commonwealth, 88 Ky., 349; Davis v. Commonwealth, 13 Bush, 218 (sec. 318); Wood v. Commonwealth, 14 Bush, 232, 233; 4 Ency. Plead. and Prac., 423, sec. 723; Coal v. People, 84 Ill., 216; Elkin v. People, 28 N. Y., 117; 1 Bishop Crim. Procedure, 360; State v. Ormiston, 66 Iowa, 216 (sec. 145); State v. Murphy, 41 Am. Dec., 49; State v. Stewart, 59 Vt., 291; Conner v. Commonwealth, 13 Bush, 714; Commonwealth v. Turner, 5 Bush, 317; Commonwealth v. Turner, S Bush, 2; State v. Grant, 86 Iowa, 216.

KOHN, BAIRD & SPINDLE for appellees.

The demurrer to the indictment should be sustained and judgment of lower court affirmed, because,

1. The act of May 20, 1890, was repealed by the new Constitution adopted September 28, 1891.
2. Said act was repealed because of its omission from the general act, revising the criminal laws, reported by the commissioners in pursuance of section 245 of the Constitution, and adopted by the General Assembly in July, 1893.
3. Said act is void for uncertainty.
4. The indictment is fatally defective in not alleging facts sufficient to constitute an offense either at common law or under the statute.

Aetna Ins. Co. v. Commonwealth, 51 S. W. R., 625; Steamship Co. v. Macgregor, 21 Q. B. Div., 545; 1 Duvall, 145, Schulten v. Brewing Co.; 96 Ky., 224, Perkins v. Auditor, 79 Ky., 310; Hetterman v. Powers, 43 S. W., 180; Auditor v. Adams, 13 B. Mon., 150; Brown v. Crawford, 6 Bush, 1; Robinson v. Swope, 12 Bush, 21; Williams v. Commonwealth, man. Opinion, 1880; Varney v. Justice, 86 Ky., 600; McTigue v. Commonwealth, 17 Ky. Law Rep., 1421; Thompson v. Commonwealth, 20 Ky. Law Rep.; Kine v. Diefenbach, 64 Ill., 291; State v. Holcombe, 46 Neb., 88; People v. Bledsoe, 68 N. C., 451-7-9; Endlich on Interpretation of Statutes, par. 202; Broaddus v. Broaddus, 10 Bush, 299; Long, Treasurer, v. Stone, Auditor, 19 Ky. Law Rep., 246; Patterson v. Commonwealth, 86 Ky., 318; Combs v. Crawford, 19 Ky. Law Rep., 1500; Fultz v. Crofton, 19 Ky. Law Rep., 1921; Smith v. Mattingly, 86 Ky., 228; Commonwealth v. L. & N. R. R. Co., 20 Ky., 491; State v. Partlow, 91 N. C., 550; Commonwealth v.

Stout, 7 B. Mon., 247; Commonwealth v. McCrory, 3 Ky. Law Rep., 241; Mitchell v. Commonwealth, 88 Ky., 349; Commonwealth v. Ward, 92 Ky., 158; Rex v. Gill, 2 Barn. & Ald., 204; U. S. v. Walsh, 5 Dill., 58; Commonwealth v. Shedd, &c., 7 Cushing, 514; March v. The People, 7 Barb, 391; Lambert v. The People, 9 Cowan, 578; U. S. v. Cruikshank, &c., 92 U. S., 542; U. S. v. Patterson, 55 Fed. Rep., 638; *In re* Green, 52 Fed. Rep., 104; Bohn Mfg. Co. v. Hollis, 55 N. Y., 1119; Cohn v. Berlin Envelope Co., &c., 56 N. Y. Sup., 589; State v. Keach, 40 Vt., 113; Lambert v. Penn., 9 Cowan, 578; Commonwealth v. Hunt, 45 Mass., 111 (4 Met. Mass.).

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

To an indictment charging appellees with the offense of criminal conspiracy a general demurrer has been sustained. The indictment is based upon the act of May 20, 1890, entitled "An act to prevent the establishment of pools, trusts and conspiracies, and to provide punishments therefor" (1 Acts 1889-90, p. 143). It is contained in sections 3915 to 3921, Kentucky Statutes, inclusive. This case involves the validity of two sections of the act, which are now embodied in sections 3915, 3917, Kentucky Statutes. They are as follows:

"Sec. 3915. That if any corporation under the laws of Kentucky, or under the laws of any other State or country, for transacting or conducting any kind of business in this State, or any partnership, company, firm or individual, or other association of persons, shall create, establish, organize or enter into, or become a member of, or a party to, or in any way interested in any pool, trust, combine, agreement, confederation, or understanding with any other corporation, partnership, individual or person, or association of persons, for the purpose of regulating or controlling or fixing the price of any merchandise, manufactured articles, or property of any kind, or shall enter into, become a member of, or party to, or in any way interested in any pool, agreement, contract, understanding, combination or

confederation, having, for its object, the fixing, or in any way limiting the amount or quantity of any article of property, commodity or merchandise to be produced or manufactured, mined, bought or sold, shall be deemed guilty of the crime of conspiracy, and punished therefor as provided in the subsequent sections of this act."

"Sec. 3917.   If any corporation, company, firm, partnership, or person, or association of persons, shall, by court of competent jurisdiction, be found guilty of any violation of any of the provisions of this act, such guilty party shall be punished by a fine of not less than five hundred dollars and not more than five thousand dollars.   Any president, manager, director or other officer or agent, or receiver of any corporation, company, firm, partnership, or any corporation, company, firm or association, or member of any corporation, firm or association, or any member of any company, firm or other association, or any individual, found, by a court of competent jurisdiction, guilty of any violation of this act shall be punished by a fine of not less than five hundred dollars nor more than five thousand dollars, or may be imprisoned in the county jail not less than six months nor more than twelve months, or may be both so fined and imprisoned in the discretion of the court or jury trying the case."

An affirmance of the judgment sustaining the demurrer is urged on the following grounds:   (1) That the act of May 20, 1890, was repealed by the new Constitution adopted September 28, 1891, because section 198 of that instrument is in conflict with it, and because, being inconsistent with it, section 1 of the schedule operates to repeal the act;   (2) that it was repealed because of its omission from the general act revising the criminal laws, reported by the commission in pursuance of section 245 of the Constitution,

and adopted by the General Assembly in April, 1893; (3) that it is void for uncertainty; and (4) that the indictment is fatally defective in not alleging facts sufficient to constitute an offense either at common law or under the statute. These objections have been elaborately and ably argued by counsel on both sides. Prior to May 20, 1890, no statute existed in this State upon the subject of pools, trusts, and conspiracies, and the statute law on the subject in most of the States is of comparatively recent growth.

The first question presented is as to the meaning of section 198 of the Constitution; and in ascertaining that meaning we are to be guided, without reference to our individual opinions of policy, by the intent of the Constitution, deducible from the language used, as understood by the people of the Commonwealth. Nor is it to be assumed, in the ascertainment of the intent of the Constitution, that in its adoption existent legislation was at all considered, unless that necessarily appears from the language used or the circumstances; for that instrument was to be of a permanent nature,—the organic law of the Commonwealth. Section 198 is as follows: "It shall be the duty of the General Assembly from time to time, as necessity may require, to enact such laws as may be necessary to prevent all trusts, pools, combinations or other organizations, from combining to depreciate below its real value any article, or to enhance the cost of any article above its real value." Is this section in conflict with the act of May 20, 1890? There can be no question that under the old Constitution it was perfectly competent for the Legislature to pass the act. It was clearly within the general powers of the Legislature, unless the Constitution contained some inhibition. Johnson v. Higgins, 3 Metc. 576. In order to decide that there is a conflict between the act and the sec-

tion, we must find that the section contains a limitation upon the general power of legislation upon this subject. If this section were, in form, a grant of power,—if it were an authority to the Legislature to legislate upon this subject in a certain manner,—much might be said, and much authority cited in support of it, in favor of the proposition that by granting power to do a certain thing, to a certain extent, the Legislature was by implication prohibited from exercising that power in any higher degree or any different manner. But this section is not a grant of power. It is the imposition of a duty. It is a mandatory requirement. And, so far from being a restraint upon the powers of the Legislature, it seems to us that it must have been intended by the framers to be a requirement that the Legislature should at least do this much, and have been so understood by the people who voted for the adoption of the instrument. Taking this view of the meaning of the section,—and, upon fair consideration, we can reach no other,—there is no conflict between it and the act then in existence. The Constitution forbids a combination to depreciate any article below its real value, or to enhance the cost of any article above its real value. The statute forbids a combination to fix, control, or regulate the price of any article, and also a combination to fix or limit the quantity of production. It must be obvious that a prohibition of combinations to fix, control, or regulate prices is greater than, and necessarily includes within its meaning, a prohibition of combinations to depreciate or enhance. Inclusion is not conflict. To increase the efficiency of a provision by providing for something more is not conflict. Unless, as we have said, the section contains a prohibition, express or implied, of action by the Legislature beyond the action therein required, there is no conflict. As to the legislative power, all the presumptions are in favor of its

exercise. "The presumption must be that the State right-
ly does what it assumes to do, until it is made to appear
how, by constitutional concession, it has devested itself
of the power, or by its own constitution, has for the time
rendered the exercise unwarrantable." U. S. v. Cruik-
shank, 92 U. S. 542, 23 L. Ed. 588. This court has again
and again announced this doctrine. The same doctrine is
laid down in Cooley, Const. Lim. p. 87 et seq. But it is .
said that the rule announced by Cooley, Const. Lim. pp. 78,
79, applies: "Another rule of construction is that, when
the Constitution defines the circumstances under which
a right may be exercised or a penalty imposed, the specifi-
cation is an implied prohibition against legislative inter-
ference to add to the condition, or to extend the penalty
to other cases." But this rule can not apply unless we
hold that the requirement of action is a grant of power.
As a matter of course, "if directions are given respecting
the times or modes of proceeding in which a power shall
be exercised, there is at least a strong presumption that
the people designed it should be exercised in that time and
mode only." Cooley, Const. Lim. p. 79. But there is noth-
ing of that sort here. Nor is anything of that sort fairly
to be inferred from the provisions of this section. It re-
quires the General Assembly from time to time, as neces-
sity may require, to enact such laws as may be necessary
to prevent combinations to depreciate or to enhance the
price of any article below or above its real value. If that
object can best be effected by a statute to prevent combina-
tions to fix or regulate the price of any article, whether
above, below, or at its real value, then, if the General As-
sembly so ordain, that is the law which necessity requires
to be enacted. No circumstances are stated in this sec-
tion under which the right is to be exercised, but to the
extent stated the Legislature is required to exercise it.

Nothing in the cases cited for appellees is in conflict with this view. It may be remarked that the cases cited in Cooley in support of the rule laid down by him, and cited on behalf of appellees, are to the effect that the Legislature can not add to the constitutional qualifications of voters, nor shorten or extend the constitutional term of office, nor add to the constitutional grounds for removing the officer, nor change his compensation, nor provide for the choice of officers a different mode from that prescribed by the Constitution, nor confer the characteristic duties of an officer upon another. These cases show clearly the meaning of Mr. Cooley's rule, and the application intended to be made of it, and that it did not apply to a case like the one at bar.

The next objection is that, six years having elapsed since the adoption of the Constitution, the statute is repealed by section 1 of the schedule, providing that "the provisions of all laws which are inconsistent with this Constitution shall cease upon its adoption, except that all laws which are inconsistent with such provisions as require legislation to enforce them shall remain in force until such legislation is had, but not longer than six years after the adoption of this Constitution, unless sooner amended or repealed by the General Assembly." It is obvious that the application of this section of the schedule depends upon whether an inconsistency exists. This question has been already practically settled. There seems to us to be no more inconsistency between the act of May 20, 1890, and section 198 of the Constitution, than exists between a quart and a pint. One includes and contains the other. It may be remarked that the quotation given from McTigue v. Com. (Ky.) 35 S. W. 121, has, so far as it would seem to hold section 1 of the schedule applicable to the closs of cases then under consideration,

been modified by Stamper v. Com. (Ky.) 42 S. W. 915, and
Thompson v. Com. (Ky.), 45 S. W., 1039; 46 S. W., 492, 698.

The next objection is that the act was
repealed because of its omission from the
general act revising the criminal laws, adopt-
ed April 10, 1893 (now constituting chapter 36 Kentucky
Statutes, entitled "Crimes and Punishments"): In sup-
port of this objection a number of cases are cited, and the
case of Buchannon v. Com., 95 Ky. 335, [25 S. W. 265,] is
specially relied upon. That case, however, was considered
in Conley v. Com. (Ky.) 32 S. W. 284, in an elaborate opin-
ion by Judge Eastin, and its scope and meaning passed
upon as follows: "We do not think the case cited, when
properly read, warrants the conclusion drawn from it by
counsel for appellant, and certainly that case did not de-
mand any such construction of the statutes as is contended
for. There the question was whether or not the act of
April 10, 1893, repealed section 4 of the act of April 11,
1873, when it undertook to legislate on the whole subject
embraced by the act of 1873, and actually adopted sections
2 and 3 of the latter act. The court there said: 'And
as section 96, embracing only provisions of sections 2 and
3 of the act of 1873, is all on the subject the Legislature
deemed necessary to ingraft in the act of 1893, the conclu-
sion is entirely reasonable that it was not intended that
section 4, or any other part of the act of 1873, should be
longer in force.' From this language it is evident that al-
though the court spoke of the act of April 10, 1893, as a
complete system of statutory laws on the subject of
'Crimes and Punishment,' yet all that was meant to be de-
cided in that case was that it is such complete system on
subjects with which it deals and as to offenses of which it
treats. It had adopted sections 2 and 3 of the act of 1873,
and had expressly and purposely left out the other section,

thereby showing an intention to repeal that much of the
law on the subject. It legislated upon the subject em-
braced by the act of 1873, and it was reasonable to assume
that it legislated fully on that subject." So in this case
we find that the subject of "pools, trusts and conspiracies"
was not legislated upon by the act of April 10, 1893. The
subject was not treated in any way in that act, and no
attempt was made therein to legislate upon it. It did con-
tain a re-enactment of the Kuklux act, and also of the act
upon conspiracy to carry on a false prosecution. Those
subjects are not in any wise akin to the subject treated of
in the act now under consideration, and the doctrine should
be limited, as laid down in Long v. Stone (Ky.) 39 S. W.
836, to holding that "general laws, comprehensive in char-
acter and actually adopted by that body, should be regard-
ed, because evidently so intended, as repeal of prior laws
on the subjects treated by them, respectively, and such
should be the construction when that purpose is plainly
shown by the context of a particular statute or other-
wise." We are of opinion, therefore, that the statute un-
der consideration was not repealed by the act of April 10,
1893.

The next objection is that the statute is too indefinite
and uncertain to be enforced, and in support of this objec-
tion the cases of Louisville & N. R. Co. v. Com. (Ky.) 35
S. W. 129, and Com. v. Louisville & N. R. Co. (Ky.) 46 S. W.
700, construing sections 816 and 818, respectively, of the
Kentucky Statutes, are relied upon. In the one case the
statute forbade the charge of more than a just and reason-
able rate of toll for transportation, and in the other pro-
hibited "undue or unreasonable preference or advantage to
any particular person or locality." In those cases the
words "just and reasonable" and "undue or unreasonable"
were held to be too indefinite and uncertain to form the

basis of the infliction of the. statutory punishment. The statute we are now considering leaves no such question open for the consideration of the jury as was left open by those statutes. It prohibits any combination to regulate or fix prices. It also prohibits any combination to limit production. We are unable to see any uncertainty in these provisions. If the statute had prohibited an unreasonable advance of prices or an unjust depreciation the question would be different. But no such question is presented. A combination to fix prices or limit production is, by the statute, unlawful. We can not see how it could be made more definite.

But it is urged that section 3917 is uncertain in the punishment provided. It will be observed that the first sentence of section 3917 provides a punishment by a fine of not less than $500 nor more than $5,000 for a violation by "any corporation, company, firm, partnership or person, or association of persons"; and the second sentence provides a punishment by a fine of not less than $500 nor more than $5,000, or by imprisonment in the county jail for not less than six nor more than twelve months, or both such fine and imprisonment, for a violation by "any president, manager, director or other officer or agent, or receiver of any corporation, company, firm, partnership, or any corporation, company, firm or association, or member of any corporation, firm or association, or any member of any company, firm or other association, or any individual." The objection is that each part of the section applies to all varieties of artificial persons, and also to natural persons, and, therefore, as a different penalty is imposed by the first part from that imposed by the second, the act is void for uncertainty. A careful examination of the second part of this section leads us to the conclusion that it was not the intention to impose the penalty denounced therein upon

any artificial person. The repetition of the words "corporation, company, firm" seems probably to have been made by mistake. But, be that as it may, we think the repeated words should be construed as governed by the proposition "of," just as they are where they first occur; that is to say, the section should be read, "or receiver of any corporation, company, firm, partnership, or [of]any corporation, company, firm or association." And this for the manifest reason that a distinction is evidently aimed at between the parties sought to be punished in the first part of the section and in the second part, and for the further reason that the punishment by imprisonment denounced in the second part is impossible of application to an artificial person, and we should so construe the statute as, if possible, to make it effective. Thus read, there is no uncertainty by reason of different penalties being made applicable to the same class of offenders, unless it results from the use of the word "person," in the first part of the section, and "individual," in the second part. But shall the statute be held void for this apparent inconsistency? Even in questions of constitutionality of statutes, courts will not lightly hold for naught the solemn declarations of a co-ordinate branch of the government. Said Chief Justice Marshall: "The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be construed as void." Fletcher v. Peck, 6 Cranch, 128, 3 L. Ed., 175.

And so in the construction of statutes it has been said by Chief Justice Pryor: "It is a well-settled rule of construction that the letter of a statute will not be followed

when it leads to an absurd conclusion; but, on the contrary, the reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it." Sams v. Sams' Adm'r, 85 Ky., 400 (3 S. W., 594). Mr. Endlich, in his work on the Interpretation of Statutes, says: "When the language of a statute in its ordinary meaning and grammatical construction leads to a manifest contradiction of the apparent purpose of the enactment, to inconvenience or absurdity, hardship or injustice, not presumably intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This is done sometimes by giving unusual meaning to particular words, sometimes by altering their collocation, or by rejecting them altogether, or by interpolating other words; the court having an irresistible conviction that the modifications thus made are mere corrections of careless language, and give really the true intention." Page 400, sec. 295.

Applying this rule to the consideration of this statute, with the view of its interpretation, *ut res magis valeat quam pereat,* we find the penalty-imposing section of the statute divided into two parts; the first part referring, with one exception, to artificial persons or combinations, and inflicting a penalty appropriate to artificial persons or combinations, viz., the penalty of a fine. We find the second part, as we construe it, referring solely to natural persons, generally occupying an official relationship to artificial persons, or holding membership in them; and this part of the section inflicts a penalty appropriate to natural persons, viz., fine or imprisonment, or both, at the discretion of the court or jury trying the case. It seems manifest that the object of the statute was, in the first part, to impose punishment upon the corporate entities which might violate the stat-

ute, and this could be done only by fine, and that the in-
tention in the second part was to impose punishment upon
the officers of such corporate entities or associations, and
punish individuals who might be guilty of the same offense,
and that in the case of the natural persons, as it was pos-
sible to impose an additional penalty of imprisonment, it
was imposed, in order the more effectually to deter them
from committing, or permitting the corporations which
they represent to commit, the offenses denounced by the
statute. From this it would seem that the word "person,"
as used in the first part of the section, is a mere inac-
curacy, which may be rejected in order to effectuate the in-
tention of the statute. As said by Judge Pryor in the case
of Bird v. Board, 95 Ky., 199 (24 S. W., 119), in which the
word "depth" was substituted for the word "width"; "In
the case before us the legislative intent becomes so appar-
ent, that, where words have been carelessly inserted that
lead to an absurdity, there is no reason why such a ju-
dicial interpretation should not be placed upon the statute
as will effect its object; the court being satisfied the use
of the word was a mere inaccuracy, and the modification
made is in furtherance of the legislative purpose." This
construction leaves the statute without objection on the
ground of uncertainty.

This brings us to the consideration of the last objection,
viz., that the indictment is fatally defective in not alleging
the acts charged against appellees with sufficient certainty,
or stating the means to be used to carry out the conspiracy.
The indictment is for a statutory offense, created by the
statute alone. It follows the language of the statute, and,
if the words of the statute are descriptive of the offense,
it is, according to the well-settled rule of this State, com-
plete.

In Moore v. Com., 92 Ky., 630 (18 S. W., 833), in an opin-

ion by Judge Holt, this court said: "Where the words of the statute are descriptive of the offense, the indictment will be sufficient if it follows the language of the statute." To the same effect are numerous other cases unnecessary to be here cited. This is not a case of common-law conspiracy, as was the case of Com. v. Ward, 92 Ky., 158 (17 S. W., 283), but a purely statutory one. The offense, under this statute, is complete if the defendant enters into an agreement with another for the purpose of fixing the price of any merchandise. No conclusion of law forms any part of any of these ingredients of the offense. They are all statements of fact, and statements for the expression of which it is difficult to imagine language more apt than that employed by the statute. We think the contention that it is necessary to set forth the means to be adopted to effect the object of the combination is fully met by the general rule as to indictments for statutory offenses where the offense is described by the statute; but we are further cited by appellant to State v. Murphy, 41 Am. Dec., 79, where the supreme court of Alabama held, in an indictment for common-law conspiracy, that: "In the prosecution for a conspiracy, it is sufficient to state in the indictment the conspiracy and the object of it. The means by which it was intended to be accomplished need not be set out; being only matters of evidence to prove the charge, and not the crime itself." And in 2 Bish. New Cr. Proc., sec. 204, it is shown that the two essentials of an indictment for conspiracy are: "(1) A combining of two or more minds; (2) the purpose of the combining."

In section 206, speaking of overt acts, it is said: "Such acts are, when the combining of the defendants in a common purpose has been shown, evidence, like their declarations, further establishing the conspiracy and illustrating its character. And, if the law gave to these acts no other

Commonwealth of Ky. v. Grinstead & Tinsley.

effect, they should not be set out in the indictment, the province of which is to state facts, not evidence." We are of opinion, therefore, that the indictment, following the statute, is descriptive of the offense.

In reaching these conclusions, we have left out of sight all questions of the policy of the law and its propriety, and, being of opinion that there was no conflict between the statute and the Constitution, have endeavored only to ascertain and give effect to the legislative will. For the reasons given, the judgment is reversed and the cause remanded, with directions to set aside the judgment, and for further proceedings consistent herewith.

Judges Burnam and Hobson dissenting.

Opinion by Judge DuRelle overruling petition for rehearing, June 8, 1900:

We have examined with some care the debates of the constitutional convention upon the subject of the constitutional provision against trusts, pools, and combinations. The debate quoted in the petition for rehearing was in regard to a proposed provision differing in some respects from the one finally incorporated in the instrument, and the examination has shown the wisdom of the general rule, several times approved in Kentucky, that the debates of a legislative body have little practical value in ascertaining the meaning to be given to the action of such bodies, and are of value chiefly in so far as they show that the attention of the body was called to the existence of facts which might influence its action. For example, it was insisted by more than one member of the convention that the provision then under discussion, which provided against combinations tending to enhance or depreciate the cost of "any article or service," did not and could not apply to any combination by farmers or laborers. Obviously, a

court will not pay the slightest attention to any such declaration in debate, but will be guided, in ascertaining the meaning of the instrument, by the language which was actually adopted to express that meaning. Considerable argument has been directed to the difference between the Federal Constitution, which is a grant of power, and the constitutions of the States, which are largely made up of limitations upon legislative power, and requirements of legislative action in specific directions. In the case of a grant of power in the Federal Constitution there goes with the grant, by implication, all power necessary to accomplish the purpose of the grant, though not specifically given. So, in construing a requirement of legislative action in a State Constitution, if we assume that the provision is not only the imposition of a duty, but a limitation of power, it must be held that the limitation does not extend to bar the exercise of any power necessary or proper to effect the purpose in terms required. Surely it can not be maintained that the Legislature was limited to adopting an act in the language of the constitutional provision. Had it done so, there is strong authority in this State for holding that such an enactment, imposing a penalty for a combination to depreciate below its real value any article, would be held void for uncertainty. Louisville & N. R. Co. v. Com., 99 Ky., 132, (35 S. W. 129); (33 L. R. A., 209). The requirement that the General Assembly shall "enact such laws as may be necessary to prevent all trusts, pools," etc., leaves to the Legislature the choice of the legislative machinery to effect the required purpose, and necessarily some discretion as to how much machinery will be required to be effective. Both the means to be employed and the extent to which they are to be employed are committed to the discretion of the Legislature; and if, in order to prevent combinations to de-

preciate or enhance an article below or above its real value, it is necessary to enact laws to prevent all combinations to fix prices, that is a detail of the necessary legislation required.   In considering the statute we have thought it proper to do so as if it had been enacted subsequent to the adoption of the Constitution, for the Legislature adopted no legislation looking to the accomplishment of the purpose indicated in section 198, and must, therefore, be presumed to have refrained on the assumption that the statute in existence was sufficient.   Such contracts as those stated in the petition to be required by certain manufacturers of their customers do not seem to be wihtin the meaning of the statute, but the question is not presented by this record, and is not decided.   The petition for rehearing is overruled.