## INTERNATIONAL HARVESTER CO. OF AMERICA v. OLIVER.

### (Circuit Court, E. D. Kentucky.   November 11, 1911.)

**1.** SALES (§ 354*)—ACTION FOR PRICE—DEFENSE—FRAUD.

In an action on a contract of sale to recover the purchase price of property delivered thereunder, a general allegation in the answer that the contract "was procured by the fraud, covin, and deceit of the plaintiff, its agents and employés," is insufficient to state a defense, since such fraud is not effective to invalidate the contract, if condoned by the acceptance and retention of the property after knowledge of the facts.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 354.*]

**2.** MONOPOLIES (§ 23*)—ACTION FOR PRICE OF GOODS—DEFENSES.

In an action on written contracts, which purport on their face to be contracts of sale, to recover the purchase price of farm machinery alleged to have been delivered to defendant thereunder, an answer alleging that the contracts were not intended as contracts of sale as between the parties, but to cover up the real transaction, which was the employment of defendant as agent for plaintiff to sell the machinery in a certain territory in Kentucky, in furtherance of an illegal combination between the manufacturers to fix and control prices in violation of the anti-trust statute of Kentucky (Ky. St. §§ 3915–3921 [Russell's St. §§ 3717–3723]), assuming that it is competent for defendant to vary the terms of the contracts by parol, does not state a defense under section 3918 of such statute, which provides that any purchaser of property from a person or corporation transacting business contrary to the preceding sections shall not be liable for the price thereof, since, if the contracts be re-formed to conform to such allegations, defendant is not a purchaser, and the transaction is not within the statute.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 23.*]

**3.** COMMERCE (§ 80*)—STATE STATUTES—ANTI-TRUST LAW—CIVIL LIABILITIES.

Ky. St. § 3918 (Russell's St. § 3720), which provides that any purchaser of property from any individual, firm, company, or corporation transacting business contrary to the preceding sections, which prohibit certain combinations in restraint of competition, shall not be liable for the price of such property, does not apply to contracts for the purchase of property which constitute interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 80.*]

**4.** MONOPOLIES (§ 23*)—DEALINGS WITH COMBINATION—LIABILITY.

One who receives property from a combination, which is illegal as in violation of Anti-Trust Act July 2, 1890, ch. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), on a contract to sell the same for it as agent at certain prices by a certain date, or to account to it for those prices at that time, if not then sold, cannot defend against such liability on the ground of the illegality of the enterprise.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 16; Dec. Dig. § 23.*

Rights and liabilities of parties contracting with trusts or combinations in restraint of trade, see note to Chicago Wall Paper Mills v. General Paper Co., 78 C. C. A. 612.]

At Law.   Action by the International Harvester Company of America against James W. Oliver.   On demurrer to answer.   Demurrer sustained.

Humphrey & Humphrey, A. M. Rutledge, Worthington & Cochran, and Pendleton, Bush & Bush, for plaintiff.

J. Smith Hays, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COCHRAN, District Judge. This cause is before me on plaintiff's demurrer to each paragraph of the defendant's answer, of which there are two. The petition consists of three paragraphs. Each one is an action on a written contract of purchase of either harvesting machinery, farm implements, farm wagons, binding twine, or other articles of merchandise on certain terms. The contract sued on in the first paragraph was made January 17, 1908, that sued on in the second was made March 12, 1908, and that sued on in the third was made February 12, 1908. In each instance the purchase price was payable September 1, 1908.

In the second paragraph of the answer defendant in substance claims that he did not purchase the articles covered by the contract in suit, but that they were placed in his hands to sell for the plaintiff, as its agent, and those contracts were executed, not to embody their understanding, but to make it appear that he was a purchaser and conceal the fact that he was simply an agent. It is conceded that on their face they are contracts of sale. That they contemplate that defendant is to sell by retail to others the property covered by them, and provide that his territory is limited to Winchester and vicinity, and that, as alleged in the petition, he turned over to the plaintiff promissory notes for certain of the property sold by him, and returned other portions, for which credit was given him, looks like the relation between them might have been that of principal and agent. Yet these facts are not inconsistent with the relation being that of seller and buyer, and the contracts in suit being real, and not mere pretenses.

[1] In the first paragraph of his answer the defendant pleads as a defense to each paragraph of the petition that the contracts in suit were each "procured by the fraud, covin, and deceit of the plaintiff, its agents and employés." The sole fact thereby pleaded as a defense to the action is fraud in the procurement of those contracts, and it is not more definitely pleaded than in the words quoted. The defendant's counsel argues that the paragraph presents a good defense, because it has been held by the Court of Appeals of Kentucky that, where fraud in the procurement of a contract is a good defense to suit on it, such is a good plea of the fraud, and it need not be more definitely pleaded. It has been so held in the following cases, to wit: Sharp v. White, 1 J. J. Marsh. (Ky.) 106; Ross v. Braydon, 2 Dana (Ky.) 161, 26 Am. Dec. 445; Whitehead v. Root, 2 Metc. (Ky.) 584; Evans v. Stone, 80 Ky. 78; Dowing v. Carr, 38 S. W. 1044, 18 Ky. Law Rep. 979; Ryan v. Middlesboro & Co.; 106 Ky. 181, 52 S. W. 33; Craft v. Barron, 121 Ky. 133, 88 S. W. 1099. But these cases only hold that, where fraud in the procurement of a contract is a good defense to a suit on it, such a plea will do. They do not hold that it will do where such fraud is not a good defense.

Counsel for defense seems to think that fraud in the procurement of a contract is always a good defense to a suit on it. Fraud, he says, vitiates everything. This is true in a sense. It vitiates everything, if it is not condoned. If it is condoned, it does not vitiate that which it affects. And fraud in the procurement of a contract is condoned, if the party defrauded has received something under the contract, and

does not, as soon as he discovers the fraud, promptly tender back to the other party what he has so received. In the case of Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798, Mr. Justice Swayne said:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted."

And in the case of Stuart v. Hayden, 72 Fed. 402, 18 C. C. A. 618, Judge Sanborn said:

"If one who is induced to make a trade or sale by fraud would rescind it, he must, immediately upon his discovery of the fraud, announce his intention so to do, and return all the consideration he has received, to the end that the parties may be put in statu quo before subsequent transactions have made such action impossible. Silence, delay, vacillation, acquiescence, or the retention and use of any of the fruits of the sale or trade that are capable of restoration for any considerable length of time after the discovery of the fraud, constitute a complete and irrevocable ratification of the transaction."

The cases of L. & N. R. R. Co. v. McElroy, 100 Ky. 153, 37 S. W. 844, Home Benefit Society of N. Y. v. Muehl, 109 Ky. 479, 59 S. W. 520, and Western & Southern Life Ins. Co. v. Quinn, 130 Ky. 397, 113 S. W. 456, cited by the counsel for plaintiff, are applications of this principle. In the McElroy and Muehl Cases it was held that fraud in the procurement of a release of a cause of action is not a good reply to an answer setting up the release as a defense to an action to enforce the cause of action released. It is essential to allege also a tender of the amount received by plaintiff in consideration of the release. In the Quinn Case it was held that a petition seeking to cancel such a release, because same had been procured by fraud, does not state a good cause of action, unless it alleges a tender of the amount received by the plaintiff in consideration of the release. Seemingly these cases hold it sufficient if the tender is made with the reply in the one class of cases and with the petition in the other. At least, they do not emphasize the fact that the tender must be made promptly on a discovery of the fraud. The cases did not involve this feature, and hence there was no occasion to emphasize or even to refer to it. But it is certain that the tender must be made promptly on the discovery of the fraud, and no doubt the Court of Appeals will so hold in any case which presents the question for determination.

Counsel for defendant claims that these cases have no application here. The ground upon which he differentiates them is that they "are cases brought to annul an alleged fraudulent contract, or cases where the party is, in violation of his contract, attempting to recover, and at the same time hold an advantage he has secured." This is a true description of these cases, but it does not differentiate them, because the difference referred to is entirely immaterial. What the defendant is seeking here to do, to adopt his language, is "to annul" his contract of purchase—"to violate" it—because it was procured by

fraud, and he wants to do this and at the same time hold an advantage he secured by it; for it appears from the petition that he received the articles covered by the contract sued on, and it does not appear that he has returned or tendered back any of them, beyond what is admitted in the petition. What possible reason is there for allowing him this privilege and denying it to the plaintiffs in those cases? The particular in which or pleading by which the "annulment" is sought or the "violation" is attempted can make no difference. In the McElroy and Muehl Cases the "annulment" was sought and the "violation" was attempted by reply to the answer setting up the contract of release as a defense to the causes of action. In the Quinn Case the "annulment" was sought and "violation" attempted by petition; i. e., in a direct attack on the contract. In this case the "annulment" is sought and the "violation" is attempted by answer to an action on the contract. The cases are alike, in that an "annulment" of the contract involved is sought and a "violation" of it is attempted in each case without a return or tender of the advantage secured by the contract. They, therefore, agree in matter of substance, and the same law is applicable to them all.

A direct authority in support of the position that the paragraph in question is not good may be found in Story's Equity Jurisprudence, § 155, where it is said:

"In cases of the alleged fraud in the sale of property, where the vendee seeks to defend against the securities at law, or to have them set aside by a court of equity on the ground of fraud, it is incumbent upon him to interpose the objection at the earliest possible moment; and if, after he discovers the existence of the facts which are claimed to constitute fraud, he continues to act under the contract, except for the mere purpose of preserving the property for the party ultimately entitled, he will be held to have affirmed the contract, with full knowledge of all the facts."

In the cases hereinbefore referred to, in which the general plea of fraud has been held by the Court of Appeals to present a good defense to a suit on a contract, it either appeared that the defendant had received nothing under the contract, or it did not appear that he had received anything thereunder. This being so, fraud alone was a good defense. But in this case it appears from the petition that the defendant received the articles covered by the contracts in suit, and it does not appear that he has returned or tendered a return of them. It must be held, therefore, that the first paragraph of the answer is not good.

[2] In the second paragraph of the answer, defendant pleads as a defense to each paragraph of the petition that prior to the making of the contracts in suit the plaintiff, a Wisconsin corporation, according to the petition, entered into a combination with certain named and other unknown corporations, manufacturers and sellers of harvesting machinery, farming implements, farm wagons, binding twine, and other articles of merchandise, by which was fixed the prices at which such articles were thereafter to be sold, which were above their real value, and limited the amount thereof thereafter to be manufactured, and by which such articles were thereafter to be manufactured in the name of the several corporations as before, but were to be

sold exclusively by plaintiff at the prices so fixed; that prior thereto, also, and having entered into such combination, plaintiff sold such articles in this state through agents in furtherance of the combination, and because of its connection therewith had been convicted of violating the anti-trust statute thereof (sections 3915–3921, Ky. St. [Russell's St. §§ 3717–3723]), and that after such conviction, and before the execution of the contracts in suit, plaintiff employed defendant to sell such articles for it as its agent in Winchester and Clark county, in this state, at the prices so fixed by the combination, in like manner as it had sold such articles through its agents before its conviction; that the contracts in suit cover such articles so placed in his hands for sale as its agent, and were made contracts of sale on their face to conceal the real nature of the dealings between the plaintiff and the defendant, and thereby avoid that statute and prevent a conviction of it, thereafter, thereunder by reason thereof; that the employment of defendant as its agent as aforesaid stated was in pursuance of the combination and in order to effectuate it; and that by reason thereof he is not liable to plaintiff on the contracts in suit.

The paragraph does not stop here, but continues, and states that the agreement with defendant, by which he undertook to act as plaintiff's agent "contemplated and involved transactions between citizens of different states"; that the articles covered by the contracts in suit were shipped free, from other states than Kentucky, into Kentucky, and the transportation thereof was an interstate transaction; that the agreement of defendant to assist in effectuating the combination was a restraint of interstate commerce and in violation of the federal anti-trust statute (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]); and that by reason thereof he is not liable to plaintiff on the contracts in suit.

I have not stated the defense or defenses set forth in this paragraph in plaintiff's language—not even substantially so. I have set them forth in my own way, and yet I think that I have caught the defenses as defendant intended to set them forth. I have endeavored to pierce the pleader's language and enter his mind, and then to state his thought directly, lucidly, and logically. It really contains two defenses—one based on the Kentucky anti-trust statute, and the other on the federal anti-trust statute. I will deal with them separately. It may be a question whether it is open to defendant to claim that the relation between him and plaintiff was that of principal and agent, and not that of seller and buyer. This is so, because of the rule that forbids the introduction of parol evidence to contradict the terms of a written contract; but the necessities of the case do not require that I determine whether the circumstances thereof bring it within any of the recognized exceptions to the rule, or, what amounts to the same thing, take it outside of its limitation. Hence I do not do so. I will dispose of the case on both hypotheses; i. e., that the rule applies, and does not apply.

It is to be noted that the position is not that the relation of principal and agent is in and of itself sufficient to defeat the action. In case such was the real relation between the parties, and it is allowable to

show it, it must be accepted that there was an absolute obligation on defendant's part to sell the goods covered by them for the prices fixed therein, and, if not sold by September 1, 1908, to account to plaintiff therefor. It is not claimed that the defendant, by the real contracts between him and plaintiff, was not obliged at least to this extent. Assuming, then, that the real relation between plaintiff and defendant was that of principal and agent, that it is allowable to show it, and that there was such an absolute obligation on defendant's part, how stands it? A sure effect thereof is to take the transaction out of the invalidating clause of the Kentucky anti-trust statute. By the invalidating clause thereof I mean the provision of section 3918 of Kentucky Statutes (Russell's St. § 3720) that:

"Any purchaser of property or articles or of any commodity from any individual, firm, company or corporation transacting business contrary to the preceding sections of this act shall not be liable for the price or payment of such articles or commodity or property and may plead and rely upon this act as a complete defense to any suit for such price or payment."

The transaction on this hypothesis is not covered by this clause. It only covers sales. It covered sales made by defendant as plaintiff's agent to purchasers thereof; but it did not cover this transaction, because, on this hypothesis, the relation of plaintiff and defendant was not that of seller and buyer, but of principal and agent.

But it may be urged that, though the transaction, on this hypothesis, does not come within this clause, no recovery can be had on the principles of the common law. The articles were placed in defendant's hands to sell for plaintiff as its agent in furtherance of an illegal combination, and in order to that extent to effectuate it, and hence it has no right to enforce the contract under which he received them against him. I pretermit the decision of this question until I come to consider the defense under the federal anti-trust statute, where it arises again, and it will be more in order to take it up and decide it at that time.

[3] Then how is it on the other hypothesis; i. e., assuming the rule against parol evidence to apply, and to require the case to be disposed of on the basis that the real relation between plaintiff and defendant was that of seller and buyer? This brings the transaction within the invalidating clause as to its nature. But this is not sufficient of itself to give it any bearing on the transaction. This is so, possibly for the reason that it appears from the petition that the contracts of selling and buying sued on herein were made outside of this state; i. e., at Cincinnati, Ohio. They were entered into through orders given by defendant for the articles covered by them, solicited by plaintiff's agent, transmitted to Cincinnati, Ohio, and there approved by the general agent at that point. The solicitation, giving, and transmission of the orders took place in this state; but it was expressly provided in them that they were subject to the approval of the plaintiff at Chicago, Ill., or its general agent outside of this state. In addition, the delivery of the articles covered by them took place at Cincinnati, Ohio; the contracts calling for a delivery "f. o. b. Cincinnati, Ohio," though possibly this circumstance is of no significance.

For the invalidating clause of the Kentucky anti-trust statute to have any effect or bearing on the contracts, then, would seem to give it an extraterritorial effect.

It is quite likely that plaintiff resorted to this method of disposing of its articles to customers in this state after its conviction under the Kentucky anti-trust statute alleged by defendant, and the object of resorting thereto was to prevent further conviction thereunder. The case in which it was convicted was that of International Harvester Company v. Com., 124 Ky. 543, 99 S. W. 637. It was conceded therein that, in order for plaintiff to be liable for conviction under the statute, it was essential that the combination which it was claimed it had entered into should have been made in this state. It was held that the combination had been made therein on the ground that it had been selling the articles of the combination therein through its agents. This was so held on the principle that, when one of several conspirators commits an overt act in furtherance of the conspiracy, thereby the conspiracy is renewed or continued. By means of contracts of sale entered into in the manner in which those in suit were, there would be no sales made in this state, and hence it could not be said that by reason thereof it had entered into any conspiracy therein. However, as the orders which resulted in the contracts of sale were solicited and obtained by plaintiff's agents within the state, it was left open to claim that this was sufficient to cause the combination to be entered into in this state, and so as to render plaintiff liable to conviction therein. But it does not follow that, because by reason thereof the combination can be said to have been entered into in this state, so as to render plaintiff liable to conviction under its anti-trust statute, the contracts of sale were made in this state and subject to the invalidating clause of that statute.

I do not find it necessary to commit myself as to the soundness of this position, for it must be held otherwise that the Legislature of Kentucky had no power to bring the contracts in suit within the purview of the invalidating clause of its anti-trust act, even though it be held that it intended so to do. This is so, because the contracts in suit are interstate, both in manner of their initiation and in their character; i. e., they called for the transportation of articles from one state to another. Though it is not directly alleged in the second paragraph of the answer that the combination therein set forth is in restraint of interstate trade, sufficient appears to lead to that conclusion. It is, however, directly alleged and charged that the contracts in suit were interstate, both in manner of their initiation and in their character. Now, the Legislature of Kentucky is without the power to invalidate interstate contracts and transactions. An invalidation thereof is a direct burden on interstate commerce. This no state Legislature has power to do. International Text-Book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 24 L. R. A. (N. S.) 493. Mr. Justice Harlan there said:

"It is the established doctrine of this court that a state may not in any form, or under any guise, directly burden the prosecution of the interstate business."

192 F.—5

I take it, therefore, that so far as the defense set up by the second paragraph of the answer is based on the Kentucky anti-trust statute, it is not good. I presuppose that, since the decision of the case of Com. v. International Harvester Co., 131 Ky. 551, 115 S. W. 703, 133 Am. St. Rep. 256, it has to be accepted that that statute is valid, and I have proceeded on the idea that it is. It is quite tempting, owing to the interesting character of the questions involved, to consider how it would have been in the absence of that decision, the effect thereof, that decision itself, and the prior cases of Com. v. Grinstead, 108 Ky. 59, 55 S. W. 720, 57 S. W. 471; Owen County Burley Tobacco Society v. Brumback, 128 Ky. 137, 107 S. W. 710. But I will not take the time to do so, as it is unnecessary.

[4] This brings me to a consideration of the second paragraph of the answer so far as it is based on the federal anti-trust statute. I will treat the case as if the relation between plaintiff and defendant was that of seller and buyer, and the contracts in suit were real, and not mere pretenses. The question as to their validity is not affected by any provision of that statute invalidating them. If they are invalid, it is because according to common-law principles the illegality of the combination created by the express provisions of that statute affects these contracts. In determining whether it does, or not, we have nothing more to do than to locate this case; i. e., to determine whether it comes within the case of Connolly v. Union Sewer Pipe Co., 184 U. S. 679, 22 Sup. Ct. 431, 46 L. Ed. 679, or that of Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486. If it comes within the Connolly Case, the illegality of the combination does not affect the contracts of sale, and they are valid; but, if it comes within the Voight & Sons Co. Case, then it does, and they are not valid. In each the party attacking the contract was a purchaser from the combination.

The sole difference between the facts of the two cases, as I make it out, is that in the Connolly Case the purchaser was not, and in the Voight & Sons Case he was, a member of the combination, not, however, willingly so, or to the same extent as others were—i. e., as a seller—but in that before he purchased he had agreed with the seller members of the combination to purchase from no one else than the combination and to resell at prices fixed by the combination. There is reason to suspect that in reality the cases were substantially the same; i. e., that in the Connolly Case, also, the purchaser was in like manner a member of the combination, and that in considering and in disposing of the case this feature of it was overlooked or ignored. The basis of this suggestion is to be found in the closing part of Mr. Justice Holmes' dissenting opinion. And at best the difference between the two cases is a very narrow one. Yet, notwithstanding this, the distinction which Mr. Justice Harlan, who wrote the opinion in both cases, drew between the two cases, which was thought to call for a difference in decision, is a plain one, and there ought to be no difficulty in determining on which side of the dividing line this case belongs. It is clear that it comes within the Connolly Case, and not within the Voight & Sons Case. It is not possible to say that the de-

fendant here was a member of or a party to the illegal combination set forth in the second paragraph of the defendant's answer. And if the true relation between the plaintiff and defendant was that of principal and agent, and the contracts sued on were mere pretenses, the case is not otherwise.

If the purchaser of property from an illegal combination is bound to pay the purchase price, so is one who receives property from it upon a contract to sell same for it at certain prices by a certain date, or account to it for those prices at that time, if not then sold. No reason can be given why the latter obligation is not as much enforceable as that to pay the purchase price in case of a purchase. Indeed, it is well settled that, if an agent of another has in the prosecution of an illegal enterprise of his principal received property belonging to the principal, he is bound to account to him therefor, and cannot shield himself from liability on the ground of illegality of the enterprise. Wood on Master & Servant, § 202; Wharton on Agency, §§ 26, 250; Mechem on Agency, § 526; 1 Am. & Eng. Enc. of Law (2d Ed.) 1088; Dunlap's Paley's Agency, § 62; Story on Agency, § 347.

For these reasons, I feel constrained to sustain demurrer to each paragraph, with leave to defendant to amend.