### SAGADAHOC LAND CO. v. EWING et al.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

#### No. 247.

RESCISSION OF CONTRACT—DELAY.

Rescission of a contract for purchase of lots of uncertain value, dependent on a speculative enterprise, asked because of false representations, will not be granted where suit is not brought till three and a half years after making the contract, and two years after the falsity of the representations must have been known, and the delay is unexplained.

Appeal from the United States Circuit Court for the Southern Division of the Eastern District of Tennessee.

Suit by the Sagadahoc Land Company against Boyd Ewing and others for rescission of contract and other relief.

This is an appeal from a decree dismissing appellant's bill on demurrer. The question is, therefore, whether a case for equitable relief was made on the face of the bill.

The appellant was an unincorporated association of persons residing in Maine, who joined in the bill and appeal as individuals. The defendants were the Cardiff Coal & Iron Company, a corporation of Tennessee; Boyd Ewing, receiver of the company's assets, appointed by the court below in another action; and 12 or more other persons charged in the bill with having organized the Cardiff Company. On October 9, 1893, the complainants filed their bill on behalf of themselves and all other creditors of the Cardiff Company. The bill averred that the organizers of the Cardiff Company obtained contracts for the purchase of large quantities of land in three of the eastern counties of Tennessee, and that such interests as were thereby acquired were vested in one of their number. That they then determined to sell the land in town lots, and sought to induce their purchase by circulars and advertisements containing material misrepresentations. That these misrepresentations were—First, that the Cardiff Company was an incorporated company with a capital of $5,000,000, and a charter carefully drawn by skilled attorneys (when, as a matter of fact, the company was not organized until the day of the sale of lots, April 22, 1890); second, that the company had $1,000,000 in cash, which had been set apart and appropriated for the purpose of making vast improvements on the land of the company in the city of Cardiff, where the lots were sold; third, that the company had all arrangements made speedily to carry out all the improvements and establish great industries at Cardiff; fourth, that the proceeds of sale would be also used in carrying out the plan and inducing immigration, so as to make Cardiff a town of 5,000 inhabitants and enhance the value of the lots; and, fifth, that the enterprise was backed by capitalists of large means and experience at or near Cardiff. That all these representations were false. That the company never had but $140,000, and this sum it spent in advertising. That the complainants, relying on these representa-

tions. were induced by Rice, the vice president of the defendant company, to buy six lots for $18,300, by his agreement to pay $5,000 of the purchase price. That Rice gave a pretended note for his share to the company, with the secret understanding that it was not a real obligation. That the land originally purchased for the company was transferred to it by H. C. Young (in whose name it had been taken for the organization) in consideration of $300,000 in cash and all the 50,000 shares of stock in the company, except enough to qualify the other defendants as directors. That by this transfer the stock was declared paid up. That H. C. Young's title to much of the land conveyed by him has entirely failed. That platted streets have been fenced up, and town lots have been devoted to agricultural purposes. That in no other way than as above stated have the stock subscriptions been paid, and that the pretended consideration received in payment of the subscriptions has failed utterly and was grossly insufficient at the time. That, by the charter of the Cardiff Company, its directors are personally liable for any fraud practiced in the sale of lands by the company, and that complainants seek to hold the directors in this bill liable for the losses sustained by complainants through the frauds above described. That complainants, by reason of the false representations by which they were induced to purchase lots in Cardiff, are entitled to have their contracts of purchase rescinded, and a decree for the money paid on the contract. The bill then proceeds as a creditors' bill to set forth that all the defendants are indebted to the company on their stock subscriptions, but that neither the company nor Ewing, its receiver, has made any call for the same or any attempt to collect them. That, by collusion with the defendants, one Bosworth was given judgment against the company, and brought a general creditors' bill in the court below, and had a receiver appointed. That, by fraud, the defendants, who are really indebted to the company, have made it appear to the court and its master that they are large creditors. That the defendants have bought in all the land of the company at a sale made by the receiver in that action. That the defendants who secured decrees in their favor for fictitious claims against the land company have transferred the same, to delay and defeat the claims of bona fide creditors of the company against them.

The prayer of the bill is as follows: "Premises considered, complainants pray leave of the court to file this bill; that they may be allowed to file this as a general creditors' bill, in behalf of themselves and of all other creditors of the said the Cardiff Coal & Iron Company, and that the bill be by your honors sustained as such; that copy and process issue, according to the rules of this court; and that defendants answer all allegations hereof fully and truly. They further pray that the debts reported to and decreed in favor of nonresident defendants. hereinbefore named, be attached and held subject to the orders of the court; that an assessment of stock sufficient to pay all debts of the corporation be made and collected; that, if necessary, the receiver in said cause of George F. Bosworth v. The Cardiff Coal & Iron Company et al. be made receiver in this cause, or a new receiver be appointed, and that the receiver be authorized, empowered, and directed to bring suit in foreign courts to collect assessments, or, if necessary, that complainants' contract of sale be rescinded. and that they have decree for moneys paid out and expended on said purchase; that all assets and debts be marshaled and offsets be made and priorities declared. and said corporations wound up and settled, and to this end that all necessary orders be made, process issue, and accounts taken. They pray that the pretended transfers and assignments by Cordley & Co. and Frank B. Cordley to defendants Geo. K. Nolte and A. E. Green be decreed to be a fraud, and done for the purpose of defrauding the complainants and others having claims against them, and that said property be held subject to the further orders of the court, as the rights of complainants and others may appear on the final hearing of this cause, and, if complainants have in anything mistaken their remedy, then they pray for such other, further, and different relief as they may be entitled under the facts and in equity and good conscience."

The defendant the Cardiff Coal & Iron Company, and Boyd Ewing as receiver, filed a demurrer to the bill, as follows: "The demurrer of the Cardiff Coal & Iron Company and Boyd Ewing, receiver, to the bill filed against them and

others in the above-entitled cause: These defendants the said company and the said Ewing, receiver, not confessing any or all of the matters and things in the bill of complaint contained to be true as alleged therein, do demur to said bill, and the separate part of the same, and for cause thereof assign and show: (1) That the bill does not state such a case nor contain any matter of equity entitling the complainants to any relief against these defendants. (2) That the bill is multifarious, with misjoinder of parties, in the following particulars, to wit: The bill is brought as a general creditors' bill to collect unpaid subscriptions and other assets, wind up the defendant company, and distribute its assets; and also brought as an individual bill by complainants as lot purchasers, to rescind and cancel their contract for purchase and to recover back purchase money,—the two causes of action, in purpose and effect, being wholly separate, independent, and antagonistic. (3) That so much of the bill as is filed as a general creditors' bill is not filed by any creditor at all, and so by no one of the class by whom it is brought. (4) That as creditors' bill it fails to show that complainants have any judgment, or even that they are simple contract creditors, without which this part of the bill cannot be maintained. (5) That as creditors' bill it appears that there is already pending a general creditors' bill, under which defendant Ewing is receiver, and another such bill in same court against same company cannot be maintained. (6) That so much of the bill as seeks rescission of complainants' contract of purchase shows the defendant company is insolvent, and in hands of the receiver, and being wound up, after which this right is gone. (7) That the same part of the bill shows the sale was early in 1890, and shows no excuse for not bringing this bill at an earlier date, and so much of the bill presents a claim stale and barred by laches, this being speculative property; that so much of the bill as prays rescission shows that the representations complained of were not of facts on which complainants might rely, but were speculative and promissory in nature and effect." The circuit court sustained the demurrer, and dismissed the bill.

John W. Yoe, John F. McNutt, and Tully R. Cornick, for appellant. Pritchard & Sizer (Clark & Brown, of counsel), for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge, after stating the case, delivered the opinion of the court.

We may concede, without deciding, that the fact that the court below had taken possession of all the assets and property of the Cardiff Company by a receiver, and was in the course of administering its estate under a general creditors' bill, gave the court ancillary jurisdiction to hear and determine a controversy like that sought to be raised by this bill, without regard to citizenship of the parties; for, admitting the jurisdiction, it is manifest that, on general principles of equity, the court was right in dismissing the bill. The complainants had no standing at all to seek the relief they prayed, except on the theory that they were creditors of the company. They could not be creditors until the contract for the purchase of lots from the company, by the terms of which they were debtors and not creditors, was rescinded. Therefore, if their bill fails to state a good case for rescission, they must go out of court. They base their right to rescind on the falsity of representations made in March, 1890, and inducing their purchase in April following. They did not file their bill to rescind for three years and a half thereafter. The lots which they bought were of uncertain value, changeable from month to month, and dependent on the success of a

manifestly speculative enterprise. It was their duty, as soon as they learned that fraud had been practiced on them, at once to give notice of rescission and seek relief in the courts. There is not a line in the bill giving any reason for their delay in taking these steps. They waited, indeed, until after the court below, in another action, had taken possession of the assets under another creditors' bill, and had sold the property of the company under its decree, before asserting their right to rescind and to be considered creditors. The bill shows the collapse of the company by the appointment of a receiver and the abandonment of its enterprise, at least two years before the filing of the bill in this case. Certainly, if there had been any fraud in the sale of lots in April, 1890, the complainants were put on inquiry as to its existence. The proceedings in the other creditors' bill and the appointment of the receiver so affected the enterprise in which the complainants had embarked that they could not have been ignorant of them. Foster v. Railroad Co., 146 U. S. 88, 13 Sup. Ct. 28. Under such circumstances, a delay of three years and a half, before attempting to rescind, cuts off the right to do so, even if it existed originally. "A delay which might have been of no consequence in an ordinary case may be amply sufficient to bar relief when the property is of a speculative character, or is subject to contingencies, or where the rights and liabilities of others have been in the meantime varied. If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction if the concern should prosper, or to repudiate it if that should prove to be to his advantage." Hayward v. Bank, 96 U. S. 611–618; Oil Co. v. Marbury, 91 U. S. 587; Grymes v. Sanders, 93 U. S. 55; Johnston v. Mining Co., 148 U. S. 360, 13 Sup. Ct. 585; Mining Co. v. Watrous, 9 C. C. A. 415, 437, 61 Fed. 163. If any cause of action exist in favor of the complainants against the directors of the company for fraud, this must be asserted by action at law. For these reasons we are of opinion that, on the face of the bill, complainants were not entitled to rescission because of unexcused delay, and therefore that the bill was rightly dismissed on demurrer. The decree of the circuit court is affirmed.