PAYNE et ux. v. BEARD et al.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1917. Rehearing Denied January 16, 1918.)

No. 4735.

BROKERS ⬤⇒31—AGENCY FOR SALE OF PROPERTY—PURCHASE BY AGENT.

Defendants were agents for the sale of land owned by complainants in Oklahoma. They made an oral agreement for its sale, and at their suggestion complainants executed a deed to the purchaser and sent it to a bank, to be delivered on payment of the price. By agreement with the grantee therein one of defendants paid the money to the bank. The deed was delivered and the grantee conveyed to such defendant. No writing had been signed as necessary to constitute a valid and binding contract of sale, under Rev. Laws Okl. 1910, § 941. *Held*, that the agency had not

terminated when defendant took the deed, and he could not make a valid purchase without complainants' knowledge and consent, and that they were entitled to have the same set aside and the two deeds canceled.

Sanborn, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Oklahoma.

Suit in equity by Horace L. Payne and Mima Payne against L. B. Beard and R. B. Beard. Decree for defendants, and complainants appeal. Reversed.

George S. Ramsey, of Muskogee, Okl. (O. H. Hoss, of Nevada, Mo., Edgar A. De Meules, of Tulsa, Okl., and Malcolm E. Rosser, of Muskogee, Okl., on the brief), for appellants.

William Hatch Davis, of Muskogee, Okl. (George W. Leopold, A. G. Cochran, and Ezra Brainerd, Jr., all of Muskogee, Okl., on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

HOOK, Circuit Judge. This is a suit by Horace L. and Mima Payne, husband and wife, against L. B. and R. B. Beard, to cancel two deeds through which L. B. Beard claims title to 80 acres of land in Muskogee county, Okl. The plaintiffs lived at Nevada, Mo. The defendants were partners in the real estate business at Muskogee, Okl., and were plaintiffs' agents for the sale of the land at the net price of $2,200. They reported having made a sale to one Lambert, a brother-in-law of R. B. Beard, at the price fixed, but before the purchase money was paid, and before plaintiffs' deed to Lambert was delivered, L. B. Beard raised the money and took a deed from Lambert to himself, without plaintiffs' knowledge or consent.

The petition sufficiently presents two grounds of complaint: First, that defendants during their agency fraudulently suppressed information of recent oil developments and transactions in the near vicinity of the land, affecting substantially and favorably its market value; and, second, that irrespective of actual fraud L. B. Beard was at the time disqualified to buy without plaintiffs' knowledge and consent, because when he did so the sale to Lambert was not so far complete that he (Beard) was discharged from his duties and obligations as their agent. On final hearing the trial court held with defendants on both grounds, and the plaintiffs appealed.

The first ground of complaint may be passed without decision. Upon the second the trial court applied Robertson v. Chapman, 152 U. S. 673, 14 Sup. Ct. 741, 38 L. Ed. 592, and Hermann v. Hall, 133 C. C. A. 619, 217 Fed. 947. These cases recognize the rule that an agent to sell property cannot become the purchaser without the knowledge and consent of his principal, and that if he does so under the cover of the name of another person he may be compelled, at the election of the principal seasonably exercised, to surrender it, and that this is so regardless of injury to the principal or the agent's actual fraud by suppressing information in his possession or misrepresenting the condition or value of the property. In the two cases mentioned it was held that the facts

did not fall within the general rule above stated. In Robertson v. Chapman it clearly appeared that, before the agent bought from the purchaser, the sale to the latter had been so far consummated that it was not in the power of either party, principal or purchaser, to rescind it, and that the "agency for the sale of the property had, in every material sense, terminated." This and the fact that the subsequent sale to the agent was bona fide, and not the carrying out of a device or prearrangement during the agency, were the ruling features of that decision. And in Hermann v. Hall it appeared that the sale by the agent to a bona fide purchaser had been "so far completed that it could have been enforced by either the vendor or the vendee," and further that "the agency of the defendant [the agent] thereupon, in all material respects, terminated." The reason of these cases is plain. But, on the other hand, if the sale by the agent has not been substantially consummated because of noncompliance with an essential legal requirement, or because of some matter of agreement between him and his customer, the agency and the disqualification of the agent still remain. The 'agent cannot catch the title while it is in the air. His right to purchase begins when he is as free to deal with his principal as the rest of the world, and there is no longer the temptation between duty and self-interest. Until that time arrives it is his duty faithfully to communicate to his principal every important development affecting the value of the property and the attitude of the prospective purchaser.

What are the controlling facts here? On May 16, 1915, the defendants, as plaintiffs' agents, offered the land to Lambert for $2,200, the net price fixed. Lambert said he would take it, and gave R. B. Beard his check for $200, on which was written "Part payment on Payne 80 in 14—14—16." He also said that when the deed came and the title was approved he would pay the balance. May 17th defendants wrote plaintiffs, saying they had sold the land to Lambert. They inclosed a deed for execution, which they suggested should be sent through a bank for collection. May 18th plaintiffs executed the deed and sent it to a bank in Muskogee, to be delivered to Lambert upon his payment to the bank for them of $2,200, net. On the same day they wrote defendants what they had done. May 19th Lambert was advised of the arrival of the deed. The trial court found from oral testimony that Lambert then said to R. B. Beard that he had probably acted a little hastily in buying, and asked Beard if he could not sell the land for him to somebody else, to let him out even and save the $200, but said, if he could not, he would take it. As we will presently note, this does not fully accord with another explanation given of Lambert's attitude. The next day, May 20th, L. B. Beard decided to buy the land himself. A deed from Lambert to him was prepared May 21st, and on the same day he made a written application to a mortgage loan company for a loan of $1,000 on the land, reciting that he had bought it the day before for $2,200. The money sought was to be used by L. B. Beard in buying the land; the balance of $1,200 was otherwise raised by him. Lambert's deed to L. B. Beard was executed May 24th, and the latter deposited it in the bank, with plaintiffs' deed, until the abstract of title was examined, the title approved, and the purchase price raised and paid. All this was concluded May 25th, and the deeds were delivered

to L. B. Beard. R. B. Beard, who had possession of the $200 check, returned it to Lambert, who destroyed it. In reply to a letter from one of the plaintiffs, L. B. Beard wrote June 11th that he had bought the property; also that, if Lambert "had taken the land, it would have been necessary for me to personally guarantee it to be a good proposition, and I decided to take it and turn it again to some one." In their answer defendants averred that, after plaintiffs' deed arrived at the bank in Muskogee, Lambert, the grantee, "had become uncertain and doubtful in his mind as to the desirability of his purchasing such land, and requested of these defendants certain guaranties respecting the value thereof, which these defendants were unwilling to give, and that said Clarence Lambert desired and requested these defendants to take said property off his hands."

The Oklahoma statute of frauds (section 941, R. L. 1910) provides that an agreement for the sale of real property shall be invalid unless some note or memorandum thereof be in writing and signed by the party to be charged, or his agent. It is clear that when L. B. Beard acted in his own behalf the transaction had not progressed to 'the point where its completion could have been enforced against Lambert. Aside from his check, not a particle of writing passed between him and the plaintiffs' agents, and even the giving of the check rested at the trial in parol. It cannot be seriously contended that the check was sufficient by itself to bind him. See Halsell v. Renfrow, 14 Okl. 674, 78 Pac. 118, 2 Ann. Cas. 286; Id., 202 U. S. 287, 26 Sup. Ct. 610, 50 L. Ed. 1032, 6 Ann. Cas. 189. A binding obligation of a purchaser to buy is tested by determining what he could be compelled to do when in an adversary, defensive attitude. Until the agent has found and bound a purchaser, it is obvious that his agency has not, "in every material sense, terminated." If the purchaser is at liberty to rescind, as Lambert was, a most important part of the agent's service remains undone. To allow him to cast aside his agency for his personal interest at such a juncture, and to support his conduct by oral evidence of the purchaser's willingness to buy, would open the door to the very evils that the rule of disqualification was designed to prevent. The correspondence between plaintiffs and defendants and the sending of the deed to the bank are not important in this connection. Lambert was not a participant in either; they were not writings or memoranda by him, and they imposed on him no obligation. It should remain in mind that defendants were not Lambert's agents, or mere impartial go-betweens. The correspondence established defendants' agency for the plaintiffs and its terms, as to which there was no issue. The sending of the deed to the bank merely constituted the bank a collection agent of the plaintiffs. It was not an escrow, under a stipulation or agreement to which Lambert was a party. When the facts are placed in their proper categories, and then considered, we think the case is like Moore v. Petty, 68 C. C. A. 306, 135 Fed. 668, in all essential particulars. See, also, Tyler v. Sanborn, 128 Ill. 136, 21 N. E. 193, 4 L. R. A. 218, 15 Am. St. Rep. 97.

We think the plaintiffs acted seasonably and that there was no ratification. It is true that they made unavailing efforts to secure an interest in the property before rescinding the sale, but they were the nat-

ural result of an uncertainty as to legal rights and caused no prejudice or disadvantage to defendants.

The decree is reversed, and the cause is remanded, for the entry of a decree in favor of the plaintiffs, and for further proceedings accordingly.

SANBORN, Circuit Judge (dissenting). By the 14th of June, 1915, Payne and his wife had received the $2,200, which was the consideration for their sale of their land, had been informed by the purchaser, Mr. Beard, that he had bought the land, and by their friend, Mrs. Ayers, that a large oil well, reported to be producing 600 barrels per day, had just been brought in on a section adjoining the section upon which their land was situated. Nevertheless they kept the $2,200, made no tender or offer to return it, made no demand for a rescission of the contract until after they subsequently learned, some time in September, 1915, that a gusher oil well producing about 600 barrels a day had been brought in on September 12, 1915, on the section upon which the land in controversy is situated, and that a lease of 80 acres adjoining their land had been sold for $16,000. Then for the first time they moved to rescind their sale, and on October 17, 1915, they brought this suit. In my opinion they were estopped from maintaining the suit by their silence and acquiescence for more than three months after they knew that their agent was their purchaser, and they were not excused for their inaction by their ignorance of their right to rescind, because ignorance of the law ordinarily excuses no man, and reasonable diligence, the mere asking the question of any lawyer, would have informed them of their right. "Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it." Kennedy v. Green, 3 Myl. & K. 722; Wood v. Carpenter, 101 U. S. 135, 141, 25 L. Ed. 807; Parker v. Kuhn, 21 Neb. 413, 421–426, 32 N. W. 74, 59 Am. Rep. 838; Wright v. Davis, 28 Neb. 479, 483, 44 N. W. 490, 26 Am. St. Rep. 347. If Payne, by merely refusing to inquire whether or not he had the right to rescind, could preserve his option to do so three months, he could by the same inaction preserve it indefinitely.

When Beard, by his letter of June 11, 1915, informed Payne that he was the purchaser of the land, Mr. Payne had the option to return the purchase price and rescind the sale, or to remain silent and thereby to affirm it. But he had not the right to speculate upon his option. He could not lawfully wait until developments, discoveries, and changes in value occurred, and then rescind if the property had increased in value, and affirm the sale if it had not. Delay, vacillation, acquiescence, even for a short period of time, is in itself an irrevocable election to affirm, especially in the case of the sale of such speculative property as that here involved. The Supreme Court early tersely expressed the established rule upon this subject, which seems to me controlling in the case at bar, in these words:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and

adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. These remarks are peculiarly applicable to speculative property like that here in question, which is liable to large and constant fluctuations in value." Grymes v. Sanders, 93 U. S. 55, 62, 23 L. Ed. 798; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 591, 593, 23 L. Ed. 328; Hayward v. National Bank, 96 U. S. 611, 618, 24 L. Ed. 855; Ward v. Sherman, 192 U. S. 168, 175, 176, 24 Sup. Ct. 227, 48 L. Ed. 391; McLean v. Clapp, 141 U. S. 429, 432, 12 Sup. Ct. 29, 35 L. Ed. 804.

And this court has stated this rule in the following words and has repeatedly enforced it:

"Upon the discovery of the fraud they could not if they would, avoid an immediate choice of an affirmance or a repudiation of the trade. If one who is induced to make a trade or sale by fraud would rescind it, he must immediately, upon his discovery of the fraud, announce his intention so to do, and return all the consideration he has received, to the end that the parties may be put in statu quo before subsequent transactions have made such action impossible. Silence, delay, vacillation, acquiescence, or the retention and use of any of the fruits of the sale or trade that are capable of restoration, for any considerable length of time after the discovery of the fraud, constitute a complete and irrevocable ratification of the transaction." Stuart v. Hayden, 72 Fed. 402, 411, 412, 18 C. C. A. 618; Kinne v. Webb, 54 Fed. 34, 38, 4 C. C. A. 170, 174; Rugan v. Sabin, 53 Fed. 415, 418, 3 C. C. A. 578, 580; Scheftel v. Hays, 58 Fed. 457, 461, 7 C. C. A. 308, 312; Wheeler v. McNeil, 101 Fed. 685, 688, 41 C. C. A. 604, 607; Burk v. Johnson, 146 Fed. 209, 217, 218, 76 C. C. A. 567, 575, 576; Richardson v. Lowe, 149 Fed. 625, 627, 628, 79 C. C. A. 317, 319, 320; Roseboom v. Corbitt, 196 Fed. 627, 634–635, 116 C. C. A. 301; International Harvester Co. v. Oliver (C. C.) 192 Fed. 59, 61; Chicago, St. P. & K. C. Ry. Co. v. Pierce, 64 Fed. 293, 296, 12 C. C. A. 110; Sagadahoc Land Co. v. Ewing, 65 Fed. 702, 705, 13 C. C. A. 83; E. Bement & Sons v. La Dow (C. C.) 66 Fed. 185, 194; Kingman & Co. v. Stoddard, 85 Fed. 740, 746, 29 C. C. A. 413, 419; Hein v. Westinghouse Air Brake Co. (C. C.) 172 Fed. 524, 526; Browning v. Boswell, 215 Fed. 826, 836, 132 C. C. A. 168.

The property sold was of the most speculative character. Payne had drilled for oil upon it and failed to find it. Drilling for oil was proceeding on the lands in the vicinity with varying success. After Payne learned that Beard was his purchaser, and before he demanded rescission, a period of more than three months, very profitable oil wells were sunk in the vicinity of this land, and its market value was vastly increased. Then it was that the plaintiffs for the first time demanded rescission. I think they ought not to be permitted thus to speculate upon their option, to refuse to exercise it, if the property failed to rise in value, and to exercise it after three months, when its value was so greatly increased. By their retention of the $2,200, their delay and acquiescence in the sale for three months after they knew that Beard was their purchaser, and until the relative value of the land and the $2,200 had entirely changed, it seems to me that they had, under the rule of law which has been quoted, irrevocably elected to affirm their sale, and had estopped themselves from revoking that election or rescinding their conveyance.